(68 Misc. Rep. 597.)

In re OSBORNE et al.

(Supreme Court, Criminal Term, New York County. August, 1910.)

1. GRAND JURY (§ 42*)—"PRESENTMENT."

 A "presentment" is a notice taken by the grand jury of any offense from the knowledge or observation of the grand jurors without any bill of indictment laid before them at the suit of the government, and is an informal accusation generally regarded in the light of an instruction on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which an indictment can be framed, and is also defined as an accusation without any bill before the grand jury and afterwards reduced to a formed indictment.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 42.*

For other definitions, see Words and Phrases, vol. 6, pp. 5531, 5532.]

2. INDICTMENT AND INFORMATION (§ 1*)—PRESENTMENT—RIGHT TO MAKE.

Under Code Cr. Proc. §§ 273, 274, providing that the first pleading on the part of the people is an indictment, a presentment is no longer a basis for a criminal prosecution.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 1.*]

3. GRAND JURY (§ 42*)—PRESENTMENT—STRIKING FROM THE RECORDS.

The Deputy Attorney General appeared before a grand jury to inquire as to a criminal charge against a corporation, and expressed an intent to withdraw the case, and the grand jury, not satisfied with his reason, sought the advice of court, who directed the inquiry to proceed. Contrary to the advice of the Attorney General, the grand jury voted to find no bill. *Held*, that its presentation to the court of a paper reflecting on the professional honor and integrity of the Attorney General and his conduct of the inquiry was without legal right, and will be stricken from the records of the court.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 42.*]

Application of James W. Osborne and others to expunge from the records of the court a certain presentment of the grand jury. Application granted.

James W. Osborne, for petitioners.

GOFF, J. The Governor of the state directed the Attorney General to attend the grand jury, in person or by deputy, for the purpose of conducting an inquiry concerning a criminal charge against the American Ice Company. In pursuance of this direction, the Attorney General, by his deputies, the petitioners herein, attended the grand jury and conducted such inquiry. At its close, the grand jury presented to the court a writing which stated:

"The grand jury, impaneled for the January, 1908, term of the Supreme Court, respectfully makes the following presentment."

Then followed a somewhat lengthy statement of the proceedings, which, epitomized, sets forth: (a) That after taking a great deal of testimony the Deputy Attorney General stated he would withdraw the matter from further consideration for the reason that a quorum had not heard all the testimony, and that, if an indictment were found, it might be open to serious attack. (b) That the record showed that a quorum was present and heard all the testimony given. (c) That the court was applied to for instructions, and that it directed that the inquiry continue. And (d) that after hearing all the testimony and the interpretation of the law from the Deputy Attorney General it was "voted to find no bill." Then followed this statement:

"The grand jury deprecates that the representatives of the Attorney General should have considered it their duty, under their oaths of office, to attempt to take the consideration of this case from it, should attempt to mis-

lead it as to the nature of the proceeding before it, and should attempt to mislead it as to the reasons for the desire to discontinue the proceedings."

This presentment is assailed on the ground that it is untrue, that it is an unwarranted imputation on the integrity and professional conduct of the petitioners, and that, in making it, the grand jury exceeded its powers and acted without authority.

From its ancient prestige, the deliverance of a grand jury, in the form of a presentment, is calculated to impress the public mind, and a person aggrieved, who has no opportunity to answer or defend, is justified in appealing to the court to rectify a wrong, if committed. The term "presentment" acquires force from its historic association with a legal proceeding which was tantamount to an indictment, and, because of that, it is commonly regarded as of legal significance. If so, it should have some force and effect and furnish a basis for some action. If it be not of legal significance, it is a mere brutum fulmen, without authority, and where it injuriously affects the individual it should not be accorded even the color of authority.

The petitioners, in support of their contention that this presentment is untrue, submit the minutes of the proceedings before the grand jury and in open court, as well as the charge of the learned justice presiding. But the question of its truth is not of prime importance, for, if that were inquired into, it would be conceding to it a legal character, as on a motion to quash an indictment for insufficient evidence. The question of prime importance is: Was the paper filed with the court a presentment by the grand jury under authority of law, using the word "presentment" in its legal sense, without regard to the nomenclature of the paper?

It is needless to enter upon a consideration of the office of a presentment at common law, for it is now but of historical interest, or to discuss the relation between it and an indictment, for that would be academic. On these subjects many judicial opinions showing research and learning have been rendered, and the great weight of authority to-day is—making allowance for special exceptions in some jurisdictions—that, in practice, the office of a presentment is no longer of legal force and effect, and that its one-time function is merged in the indictment. A concise definition is found in the American and English Encyclopedia of Law (volume 22, p. 1226):

"A presentment is a notice taken by a grand jury of any offense from the knowledge or observation of the grand jurors, without any bill of indictment laid before them at the suit of the government."

And, again:

"It is an informal accusation, which is generally regarded in the light of an instruction upon which an indictment can be framed."

In Mack v. People, 82 N. Y. 235, a presentment is defined as "an accusation by the (grand jury) without any bill before it, and afterwards reduced to a formed indictment."

Conceding the correctness of these definitions, are they of practical use as applied to our system of procedure, where the Attorney General or district attorney has a right to attend the grand jury, and where,

without their signatures, an indictment is not effective, and, without an indictment, no criminal prosecution (except under the statute for misdemeanors) can be sustained? It not infrequently happens that, in straining into the misty past for precedents, we are prone to overlook the changes and modifications in the law made necessary by modern conditions and requirements. In 1881 there was passed by the Legislature an act to establish a Code of Criminal Procedure, which was intended to make certain a system of practice and pleading in criminal law. Chapter 2 of title 4, part 4, treats of the formation of the grand jury, its powers and duties, and chapter 1 of title 5, part 4, treats of the finding and presentation of the indictment. Throughout these two chapters, the word "present" or "presentment" is used to define or prescribe the act to be done in relation to the indictment. In no place is the word "presentment" used as a substantive, except in one section (250), where it is provided that the clerk of the grand jury must keep the minutes of the proceedings "(except of the votes of the individual members on a presentment or indictment)." From the absence of any provision for the making of a presentment and the particular provisions for the finding and presentment of the indictment, it is clear that the word "presentment" in section 250 is not used in the sense of differing from or being independent of indictment, but is used in a co-ordinate sense, or as synonymous with indictment. Not only is this view sustained by the general scheme of the Code provisions, but it is emphasized by the language of section 268: When an indictment is found, it must be indorsed "a true bill." Of section 269: If an indictment be not found, the deposition and statement must be returned indorsed to the effect that the charge is dismissed. Of section 272: An indictment when found must be presented by the grand jury to the court. Of section 273: All the forms of pleading in criminal actions heretofore existing are abolished; and hereafter the forms of pleading and the rules by which the sufficiency of the pleadings is to be determined are those prescribed by this Code. And of section 274: "The first pleading on the part of the people is the indictment."

Thus the law, plainly expressed, is that a grand jury can act only in the manner prescribed by law, that when it so acts a certain definite legal result must follow, and that such result can be expressed only in either one of the two formulas, " a true bill found" or "charge dismissed." Whatever office a presentment performed, whether as a basis for a criminal prosecution or as a direction to the prosecution to frame an indictment, it has been expressly abolished, and the grand jury, in its inquiry as to whether a crime has been committed, is limited to formulating or dismissing the charge, just as a petit jury is limited to a verdict of "guilty" or "not guilty." From the law as it is, no other conclusion can be reached by any process of rational reasoning, and this can only be reached after overthrowing the prepossession inculcated by a reverent regard for institutions and customs which have ceased to exist.

Applying these rules to the case under consideration, what were the powers and duties of the grand jury? To inquire into a charge that

the American Ice Company had violated the law. In the course of that inquiry none but legal evidence could be received. Id., § 256. If sufficient legal evidence was produced, there devolved a duty to indict; if not, to dismiss the charge. It was not within the scope of its powers to investigate the conduct of the Attorney General's representatives. They were not charged with having committed a crime, nor was any evidence taken to support any charge against them, and yet the greater part of the so-called presentment made to the court is taken up with a recital of what happened in the grand jury room, coupled with two distinct accusations of bad faith and unprofessional conduct on the part of its legal advisers, for certainly an attempt by sworn officers of the law to willfully mislead a grand jury on a material matter is such a betrayal of the confidence reposed and such a violation of the oath of public office and of the oath taken on admission to the bar that professional disgrace and expulsion from the bar would be but meet and appropriate.

These accusations mainly rest upon a stated cause, that the Deputy Attorney General attempted to take the consideration of the case from the grand jury. An examination of the minutes shows that the Deputy Attorney General expressed an intention to withdraw the case, and gave as his reason that a quorum had not been present at the taking of all the testimony and that, in consequence, an indictment, if found, would be open to attack. The grand jury was not satisfied with the reason so given, and sought the advice of the court. This it had a right to do. The learned justice presiding evidently did not agree with the Deputy Attorney General, and he directed the inquiry to proceed. It did proceed. Further testimony was taken, and, at its close, the grand jury disregarded the advice of the Deputy Attorney General that sufficient evidence had been given to warrant the finding of an indictment, and voted "to find no bill." This was the exercise of a power which was exclusively vested in the grand jury, and both legally and morally it must be presumed that that power was wisely and properly exercised. But its exercise completely exhausted all its power, and when the professional honor and integrity of its legal advisers were assailed it was without legal right or justification. Even if the Deputy Attorney General sought to withdraw the case, it may be that his reasons were as cogent to him as the reasons of the grand jury were to it for retention. A criminal charge is instituted by the people of the state through its prosecuting officers. When a grand jury hears testimony concerning the charge, that does not vest in it a right to hold the case for final action against the will of the prosecutor. This expression does not mean that the grand jury is in any wise limited in its power to inquire into all crimes committed or triable in the county, but it is directed to a case similar to the one in hand, where the evidence is voluminous and complex, and where the grand jury must of necessity depend upon the prosecutor and present the testimony. The people repose confidence as well as power in their prosecutor, and it must not be presumed that he will abuse either. Even after indictment found, he may move the court to dismiss it, or he may decline to prosecute it, and so, surely, by parity of reasoning,

if he can do that after an indictment, he can discontinue proceedings before indictment. A grand jury may take umbrage at a discontinuance; but, because of it, it has no legal cause of complaint, least of all is it justified in arrogating to itself a power that does not belong to it.

It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest, they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation, for it must be borne in mind that, if the gentlemen of the grand jury were to meet as an association of individuals and give expression to the sentiments contained in a presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain exaggerated and unfounded statements. The mischief arises from a prevalent belief that a grand jury making the conventional presentment speaks with great authority and acts under the sanction of the court, thereby giving to its deliverance a solemnity which impresses the mind of the public. This is a grave error. The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens may be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that, under an ancient form, which they have not a legal right to do.

In the courts of many of the states of the Union there have been expressions of judicial opinion on this subject, and, while they vary as affected by the local jurisdiction and the particular facts and circumstances, they all agree in holding as reprehensible an attack on private individuals by grand juries under the guise of a presentment. It is unnecessary to cite these numerous authorities; but two of recent date in our own state are worthy of attention. In Matter of Jones, 101 App. Div. 55, 92 N. Y. Supp. 275, a divided court refused to expunge a presentment which censured a public official; Jenks, J., writing the prevailing opinion:

"I think that if, under the guise of a presentment, the grand jury simply accuse, thereby compelling the accused to stand mute where the presentment would warrant an indictment so that the accused might answer, the presentment may be expunged; but I do not think that a presentment as a report upon the exercise of inquisitorial powers must be stricken out if it incidentally point out that this or that public official is responsible for omissions or commissions, negligence or defects."

This is a recognition of the power of the grand jury to present a report, ex mero motu, of its investigation into the willful and corrupt

misconduct in office of public officers and into the condition and management of the public prisons. Code Cr. Proc. § 260. But the difficulty arising from the confusion of terms remains unsolved. The learned justice concedes that if the presentment would warrant an indictment, so that the accused might answer, the presentment may be expunged. That implies that the presentment contains an accusation of crime. If that be so, it can only be found on the knowledge of grand jurors, supported by their sworn testimony and signed by at least twelve. Blackstone, Book 4, § 301; Collins v. State, 13 Fla. 657; Matter of Grosbois, 109 Cal. 445, 42 Pac. 444. But what can be the function of a presentment that does not accuse of a criminal act, but which disparages a citizen and holds him up to obloquy and contempt? Surely it was not meant that the latter might stand while the former might be expunged. In the dissenting opinion, Woodward, J., says:

"All of the old forms of criminal pleading being abolished, the people being limited to an indictment which shall charge the commission of a definite crime and state the acts constituting such crime, and a presentment being the equivalent of an indictment in the common law, as it was understood at the time of making our state Constitution, it follows that any other action on the part of a grand jury, in dealing with a citizen, is without authority of law."

It can be no detraction from the learned and scholarly prevailing opinion, nor in the slightest degree a diminution of that respect which should be entertained for the judicial action of that tribunal, to express that the dissenting opinion, in the words of Bacon, is founded on the "better reason."

In Matter of Heffernan (County Court, Kings County, March, 1909) 125 N. Y. Supp. 737, an application was made to set aside and expunge an indictment by the grand jury which censured by name certain public officers for neglect of duty and of the public interests. In granting the application, Dyke, J., said:

"Presentments should be made use of only where clearly necessary. Their use by a grand jury is more honored in the breach than in the observance, and in the present case it has done an injustice to public officials which, in fairness, I shall do my part to set aside."

Some states have abolished the grand jury system. This state yet preserves it, and it may be wise that it does so, for it is an institution that has indelibly impressed upon the pages of history a record for the protection of the citizen against the arrogance and oppression of power and has inspired in the hearts of the lawless and corrupt a healthy fear of its powers and honesty. But its action should be checked when, from thoughtlessness or misconception of its jurisdiction or an exaggerated idea of its own importance, it arraigns the citizen in phrases accusing him of acts or conduct which in themselves are not criminal, thereby precluding him from the right guaranteed by the Constitution to every man to meet his accusers face to face before a jury of his peers, but which are the more insidious and harmful because they must remain without answer or denial. Such is this case, and in the interests of justice I am constrained to protect the Attorney General and his deputies from an injustice by di-

recting that the paper presented to the court by the grand jury, bearing date the 7th day of April, 1908, and entitled "a presentment," be stricken from and expunged from the records of this court.

Application granted.