REPORT OF GRAND JURY: WILLIAMS, Petitioner.

*March 13—April 7, 1931.*

For the appellant there was a brief by *Swietlik & Burns* of Milwaukee, and oral argument by *George A. Burns* and *F. X. Swietlik.*

For the respondents there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, and *Oliver L. O'Boyle,* deputy district attorney, and oral argument by *Mr. O'Boyle.*

FAIRCHILD, J.   The controlling issue involved in this appeal is whether or not the grand jurors had the right to file the report in question with the court.   The petitioner urges that the report should have been stricken out in its entirety or at least those portions thereof which he claims refer to him, the portions being specifically set out in the petition which he filed.   This raises the question as to whether or not a grand jury has legal authority to file a report other than the report of progress and the returning of indictments.   It is a fact that at various times courts have accepted such reports made by grand juries and this seems to have been done upon the theory presented and very ably discussed by the learned trial court in his opinion at the time of his decision upon petitioner's application.   At times these reports have gone unchallenged.   At other times they have been challenged and requests have been made to strike them from the files.   When an issue has been joined the rulings of courts of last resort in the vast majority of instances have been to the effect that a grand jury has no authority to make a report criticising individuals either by

name or by inference and that the grand jury's powers and authority are limited to those conferred upon it by law. It appears that in most of the states these powers of the grand jury are rather definitely fixed by statute. In Wisconsin grand jurors are summoned to attend sittings of the court only when the judge thereof makes and files with the clerk an order in writing directing a grand jury to be summoned and this order specifies the time at which the jurors shall appear. Sec. 255.17, Stats., provides that the jury so selected may report progress and return indictments to the court from time to time during its session and until discharged. The work of the grand jury is then done under the supervision of the court with the assistance of the district attorney. Its purpose is to discover wrongdoing and upon sufficient evidence to accuse individuals by indictment so that a proper prosecution of offenders may occur. Its function is judicial as distinguished from legislative. It is limited in its power to return indictments and report progress from time to time so that the court on whose order the grand jurors were summoned may be advised of the completion of the work.

While the statute does not in terms prohibit their extending their activities, that is impliedly commanded. If their investigation has disclosed nothing as a basis for accusing any one by indictment they should say so and depart. In *Bennett v. Kalamazoo Circuit Judge*, 183 Mich. 200, 150 N. W. 141, there is a discussion of the question before us arising there because a report had been made charging a district attorney with misconduct and general neglect of duty and he had made an application to the circuit court to strike and expunge from its files this report of the grand jury. There, as here, the trial court refused to strike out the report because in his opinion as a matter of law the grand jury had the lawful right to make the report for the purposes set forth therein and held that the petitioner's remedy, if he had any in the premises, was by action or suit against the grand jurors and all who may have taken part in the prep-

aration and publication of the report if the matters embraced therein were false and untrue and not made in good faith by the grand jury.

In passing upon this ruling of the circuit court the supreme court of Michigan reviewed quite thoroughly similar cases and concluded with this language:

"A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the contrary practice must be apparent to all. While the proceedings of the grand jury are supposed to be secret, it is clear that in the present instance that secrecy was not inviolate, for the objectionable report found its way into the press of Kalamazoo within a few hours after it had been filed. Whether the matter contained in such report be true or false, it can make no difference with the principle involved. In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps, upon insufficient evidence, or no evidence at all, without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends every one's sense of fair play and is surely not conducive to the decent administration of justice. Upon the coming in of said report, we are of the opinion that it was the duty of the trial court to have refused to accept it, or file it with the records of his court. Having received and filed it, upon the application of the petitioner, it was plainly his duty to have expunged it from the files. The writ will issue as prayed."

In support of the rule described in the Michigan case there may be cited the case of *In re Heffernan*, 125 N. Y. Supp. 737, where this language is used:

"They [grand jurors] are not part of the administrative government of a great municipality. They have the fullest and amplest power to investigate, as it is their solemn and prescribed duty to do, into 'the wilful and corrupt misconduct in office of public officers of every description in the county.' Finding any such evidence of wilful and corrupt misconduct,

it would be their clear duty to indict. Then the official could have his day in court, where he would receive either the condemnation which he deserved if his actions have been unlawful, or the vindication that he would desire in case he was blameless. From a grand jury obviously nothing but the fairest consideration of any questions submitted to them is expected. The star chamber of the olden days no longer exists, and any action on the part of a grand jury which would partake of the character of the proceedings of that ancient and abhorred system would not be tolerated today."

Further authorities bearing upon this subject are *In re Osborne*, 68 Misc. 597, 125 N. Y. Supp. 313; *In re Woodbury*, 155 N. Y. Supp. 851; *In re Funston*, 133 Misc. 620, 233 N. Y. Supp. 81; Edwards, The Grand Jury, p. 157; *Rector v. Smith*, 11 Iowa, 302.

Publicity of the jury's proceedings is expressly prohibited by custom and by positive legislative enactment. Every means is provided to maintain this privacy that can be and still have a practical method of impeaching witnesses who testify differently in a trial on an indictment from the way they did when before the grand jury.

The legislative bodies, legislatures and common councils, are so amply provided with means for investigation into practices inimical to the public welfare and as it is in the province of these bodies to prohibit and modify in proper instances things not *malum in se,* there is no occasion for a court to depart from the field fixed for it by the constitution, legislation, and practice to invade that of the legislative branch of the government. While a report of a grand jury may at times be helpful, the doctrine which confines the grand jury's work to investigation and reporting indictments rests upon the soundest legal reason.

The report that has caused this controversy contains this statement by the jurors:

"While in our opinion none of the foregoing is proper subject matter for indictment, it is bad practice and we cannot criticise or condemn it too severely."

Had this investigation been made by a legislative body and had it reached the same conclusion, some act might have followed tending to correct abuses. For such a body has power to act in changing practices calling for correction, while the court can act only on the presentation of indictments.

We think the petitioner is not guilty of laches in making his application to strike out this report. It has happened as suggested above that reports have been received and have been permitted to go unchallenged, and so long as they are confined to matters that are harmless to an individual that is apt to occur, and only when an individual has been aroused by some result of the filing of the report is he likely to take upon himself the burden of causing its removal from the record. We think, under the circumstances disclosed in this case, that the petitioner's failure to act until some time after eight months from the filing of the report cannot be held to be laches. We are of the opinion that the prayer of the petitioner to strike the said report should have been granted.

*By the Court.*—Order reversed, and cause remanded with directions to expunge the report from the files of the court.