THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES J. McCABE, JR., Defendant.

Supreme Court, Queens County, July 7, 1933.

*Elvin N. Edwards, District Attorney,* for the plaintiff.

*Adams, Ryan & Hayes* [*David Tollins* of counsel], for the defendant.

CUFF, J.   Two indictments of three counts each charge in substance that defendant, in his capacity of city clerk of the city of Long Beach, misappropriated $2,691.50.   The removal is sought on the ground that a fair trial cannot be accorded defendant in Nassau county for the reason that the minds of prospective jurymen have been inflamed against defendant on account of the publicity given to (1) the report of the State Comptroller who examined the fiscal affairs of the city, and (2) a presentment handed up by the grand jury that indicted defendant which criticized Long Beach officials.

The State Comptroller is authorized by law to examine and report concerning the fiscal affairs of villages, towns, certain cities and certain counties.   In doing this work the present Comptroller has uncovered many irregularities in municipal government.   In each instance he files a report and makes recommendations.   His primary duty is not to discover crime.   It is to improve local government.   If, however, commission of a crime comes to light, it is his duty to bring that to the attention of the authorities constituted to deal with that subject.   Defendant's indictment followed an examination by the State Comptroller.   His report, which referred to defendant among numerous other matters, was given publicity

but not more than the usual notice to which a matter of that importance is entitled. To accept defendant's contention that the venue should be changed because of the Comptroller's examination and report would establish a rule that would be invoked in every county where a local official is under indictment as a consequence of disclosures of the State's fiscal officer. Ordinarily a criminal case should be tried in the county where the crime is alleged to have been committed. There is nothing in the publicity relating to the Comptroller's report that would tend to influence a prospective juror's mind so that he will enter upon his duties prejudiced against the defendant.

The presentment filed by the grand jury, which defendant assigns as his second and principal reason for a change of venue, refers to a multiplicity of events and happenings in Long Beach city. The existence of that document furnishes the defendant with the only real argument for the relief he seeks.

A careful study of the presentment shows that it was unnecessary. It is simply an echo of the Comptroller's report. Twelve of its sixteen pages are devoted to an arraignment of the officials of the city of Long Beach because that city owes the county $837,097.04 for taxes. There is nothing to startle Nassau county people in that disclosure. They have been reading about that deplorable condition in the newspapers for years.

The vice of the presentment, however, is that it attempts (I do not say intentionally) to set up the people of Nassau county outside of Long Beach against that city, its inhabitants and officials. The following language is relied upon by defendant as particularly damaging: " The budget requirements of Nassau county fall short of realization to the extent of the amount due to the county from the City of Long Beach, and which has not been paid. As a result the county of Nassau is compelled to borrow in order to cover this deficit " (p. 6).

Jurymen in Nassau county must be taxpayers. In other words, this presentment says to the triers of the fact in cases involving Long Beach officials, " You are out of pocket because of the conduct of the defendants." This same presentment last month furnished the principal reason for a change of venue in the cases of other indicted Long Beach city officials. Justice MITCHELL MAY, granting that application, said in part in his memorandum (*People v. Frankel*, 149 Misc. 195): " Simultaneously with the filing of such indictment, the grand jury of said Nassau county handed down its presentment wherein it appears, among other things, that ' the taxpayer of the city of Long Beach, in paying his or her tax, * * * has been deceived by reason of the diversion of the tax funds and

must ultimately pay, through the medium of taxation, for this unwarranted diversion. The evidence and the examination into the financial condition of the city of Long Beach warrants the comment that it is extremely doubtful if the city of Long Beach will ever be able to reimburse the county to the extent of its present indebtedness.' This presentment was printed in full in some of the prominent local newspapers, and in newspapers published in the borough of Manhattan and in the borough of Brooklyn, which are widely read by the residents of Nassau county. The only inference that can be gathered from the indictment, the presentment and the general news articles is that the taxpayers of Nassau county must pay, through taxation, for the alleged diversion of the funds, amounting to $221,797.24. As every member of the jury drawn in Nassau county must be a taxpayer in such county, it needs no argument to establish the immediate bias and prejudice which must be in the minds of everyone called for jury duty herein when he will, as he must, become acquainted with the fact that he must bear a part of the burden for the alleged malfeasance and misfeasance in office of the defendants herein."

The question arises by what authority was this mischievous presentment made a public record. Nothing in the law definitely sanctions a presentment. The practice has come to us from olden times. It was rejected by our Legislature as long ago as 1850. At that time in a proposed code of criminal procedure it was provided that the grand jury could proceed by " presentment or indictment." " Presentment " was eliminated by the Legislature which adopted the code, and such procedure has never become the law of this State. In *Matter of Jones* v. *People* (101 App. Div. 55) a divided court sustained the filing of a presentment under certain circumstances. The dissenting opinion by WOODWARD, J., is a convincing and sound argument. I agree with GOFF, J., who in *Matter of Osborne* (68 Misc. 597) said of the decision in the *Jones* case, " that the dissenting opinion, in the words of Bacon, is founded on the ' better reason.' " In *Matter of Gardiner* (31 Misc. 364) the right to file a presentment was under severe fire from the court, and, as in the *Osborne* case, the presentment was ordered off the court files.

I can find no statutory authority for filing a presentment by a grand jury.

" All of the old forms of criminal pleading being abolished, the people being limited to an indictment which shall charge the commission of a definite crime and state the acts constituting such crime, and a presentment being the equivalent of an indictment in

the common law as it was understood at the time of making our State Constitution, it follows that any other action on the part of a grand jury, in dealing with a citizen is without authority in law." (WOODWARD, J., in *Matter of Jones* v. *People*, 101 App. Div. 55.)

" On these subjects many judicial opinions showing research and learning have been rendered, and the great weight of authority today is — making allowance for special exceptions in some jurisdictions — that, in practice, the office of a presentment is no longer of legal force and effect, and that its one time function is merged in the indictment." (*Matter of Osborne*, 68 Misc. 597, 600.)

The grand jury performs a most important duty. It stands between the people and oppressive officials. Our Constitution forbids conviction of any person of a felony unless he has first been indicted by a grand jury. Its duty is not only to indict. It protects from unjust prosecution. It is judicial in nature. It has the broad power to listen to evidence offered by one side of a controversy only. It has done great work in the past and is doing great work today. There is a movement to abolish it which has gained headway in England. Exceeding its powers will sound the death knell of the institution in this country. " Judge KING, in the case of *Lloyd and Carpenter* (5 Penn L. J. 62), said: ' Grand juries are high public functionaries. * * * They are the great security to the citizen against vindictive persecutions, either by government, or by political partisans, or by private enemies. In their independent action, the persecuted have found the most fearless protectors; and in the records of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice, and the intemperance of prejudice.' " (*Matter of Gardner*, 31 Misc. 364, at p. 367.)

Judge FOSTER in the *Gardiner Case* (*supra*) said: " While it may be observed that the court has tolerated rather than sanctioned such presentments of things general, yet the grand jury should never under cover of a presentment present an individual in this manner, for if it have legal evidence of the commission of the crime it should find an indictment against him upon which he could be held to answer, and if it have no such evidence, it ought, in fairness, to be silent."

A presentment is a foul blow. It wins the importance of a judicial document, yet it lacks its principal attributes — the right to answer and to appeal. It accuses but furnishes no forum for a denial. No one knows upon what evidence the findings are based. An indictment may be challenged — even defeated. The presentment is immune. It is like the " hit and run " motorist. Before appli-

cation can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed.

The presentment filed in this case is a striking example of why presentments should not be filed. This document arraigns the Long Beach officials for not paying the taxes, but it is silent as to the county officials who did nothing while the debt mounted from $84,720.74 in 1926 to $837,097.04 in 1933. Simple legal proceedings, brought years ago, would have cured the whole situation. Section 139 of the Civil Practice Act gives a preference to such a proceeding, which would have insured an immediate determination. A paragraph in the presentment is devoted to the funds received by the city for parking privileges. It charges that the full amount of the receipts was not accounted for. The basis for this accusation is: " As a matter of common knowledge, the automobiles parked in the city  *  *  *  are very numerous." Common knowledge is not evidence. Section 256 of the Code of Criminal Procedure provides: " The grand jury can receive none but legal evidence." The presentment convicts of misappropriation, without hearing, every person who had anything to do with the parking activities in the city. These instances are typical of the whole presentment.

While I concede that this presentment furnished ample ground for transferring the case of *People* v. *Frankel* to another county, I am not satisfied that its damaging effect is sufficiently far reaching to affect defendant's trial. He is a city official. He is charged with misappropriating the city's funds. It appears, however, that the funds were restored to the city treasury even before the indictment. There is no danger, as defendant's counsel argues, that the jury drawn will think that they will be taxed to make up this shortage. Even the presentment — as generous as it is in accusing — does not suggest that. Upon careful consideration I am unwilling to say of the jurymen of Nassau county that they will be prejudiced against this defendant because of having read the presentment. Motion is denied.