14 N.J. Super. 542 (1951)
82 A.2d 496
IN THE MATTER OF THE PRESENTMENT MADE TO THE SUPERIOR COURT OF NEW JERSEY, HUDSON COUNTY, BY THE HUDSON COUNTY GRAND JURY ON APRIL 13, 1951.
Superior Court of New Jersey, Law Division.
Decided July 10, 1951.
*544 Mr. Frank G. Schlosser, for the petitioners Fred M. De Sapio and Michael M. Borelli.
Mr. Stephen Mongiello, pro se.
Mr. Simon L. Fisch and Mr. William A. O'Brien, for respondent (Mr. Horace K. Roberson, Prosecutor of Hudson County, attorney).
PROCTOR, J.S.C.
This is a motion by Fred M. De Sapio, Michael M. Borelli and Stephen Mongiello, who were commissioners in the City of Hoboken, asking for an order expunging from the files of this court the report of the grand jury of Hudson County, dated April 13, 1951, or, in the alternative, certain parts of the aforesaid report.
It appears that on September 2, 1947, the Board of Commissioners of the City of Hoboken adopted a resolution whereby one Shea was to probe "the affairs and conditions of the Police Department, to investigate the acts of the Police Department regarding the suppression or protecting of gambling, to investigate the efficiency of the Police Department, * * *." Upon the completion of such investigation Shea made a report which was not made public although each commissioner received a copy of it.
In the spring of 1951, at a hearing before the United States Senate Crime Investigating Committee, a part of the Shea report which indicated there had been organized gambling in the City of Hoboken was made public; whereupon the county prosecutor brought the matter to the attention of the Hudson County grand jury for investigation. While the *545 grand jury was pursuing its investigation, the entire Shea report was publicized and received wide circulation.
On April 13, 1951, the grand jury, having exhaustively inquired into matters so referred to them, returned a presentment or report to this court in which they stated: "There was absolutely no evidence before us of the commission of any offense against the criminal laws of this state for which indictments could be returned at this time." The report is voluminous and consists largely of a detailed account of the grand jury's investigation. While it exonerates certain persons mentioned in the Shea report of any improper conduct, it also specifically charges that the petitioners herein entered into a "plot or scheme" to oust another commissioner from the Department of Public Safety.
At the conclusion of the oral argument the court refused to expunge the report in its entirety, but reserved decision as to the deletion of that part which charged that petitioners herein entered into the above mentioned "plot or scheme."
In New Jersey, the grand jury is a creature of the common law and our Constitution provides that it may proceed by presentment or indictment. N.J. Const. 1947, Article I, par. 8. There are no statutes in this State respecting the authority and power of a grand jury which are here pertinent. The distinction between the two forms of procedure was explained by Judge (now Justice) Ackerson in O'Regan v. Schermerhorn, 25 N.J. Misc. 1 (Sup. Ct., Cir. Ct. 1946). Technically, a presentment lacks the formality of an indictment. It demonstrates the intent of the grand jury to indict and authorizes the prosecuting attorney to frame an indictment upon which the accused may be brought to trial.
Sometimes grand juries make written reports to the court. These reports are not intended to be followed by indictments and hence are not true common law presentments. However, the custom has long existed in this State for grand juries to consider methods of administration of municipal governments and point out where there are defects or where improvements may be made. This is done in a report *546 commonly known as a presentment. Much can be said in favor of this custom. Such reports commenting on or condemning general conditions which the grand jury finds to exist can do no harm but may be followed by beneficial results to the community, for the reason that recommendations of a grand jury, an arm of the court, carry great weight in the public mind. Conceding that criticism of public officials raises questions of public interest just as truly as a report concerning conditions, nevertheless, it is contrary to fair play and sound public policy when in such a report the grand jury, without intending it to be the basis for an indictment, condemns the acts and impugns the motives of individuals, whether they be public officers or private citizens. In the public mind such a report or presentment is the equivalent of a judicial finding, yet it lacks a fundamental principle in our system of justice  the right to defend one's self. In discussing presentments, Chief Justice Gummere in his charge to the grand jury of Essex County in 1907 (30 N.J.L.J. 306), said:
"In dealing with this matter, however, you might bear in mind that a presentment is sometimes a cruel thing. When a man is indicted his character is attainted because the general public believes that he would not be indicted if he had not violated the law. If he is innocent, however, he has the opportunity to demonstrate it. Where a presentment besmirches the reputation of a man he has not the opportunity to justify himself. He goes through life with a stigma, and there are no charges which he may meet. He is charged with matters not subject to the criminal law, although not looked on with credit."
Such a presentment accuses but furnishes the accused with no right to his day in court. There is no forum in which he can test the truth of the charges contained therein as the grand jurors in submitting such presentment are clothed with an absolute privilege. O'Regan v. Schermerhorn, supra.
The research of counsel and the court has failed to disclose any reported decision in this State relating to the application of an aggrieved party to expunge a presentment from the files of the court to which it was returned. However, *547 the great weight of authority throughout the country holds that it is improper for a grand jury to present with words of censure and reprobation a public official or other person by name without presenting him for indictment, and the accused has the right to apply to the court to have the objectionable matter struck from its files. 38 C.J.S., Grand Juries, sec. 34 (3), p. 1034; 24 Am. Jur., Grand Jury, sec. 36, p. 859; In re Report of Grand Jury of Baltimore, 152 Md., 616, 137 A. 370 (Ct. of Apps. 1927); In re Report of Grand Jury, 204 Wis. 409, 235 N.W. 789 (Sup. Ct. 1931); Ex parte Robinson, 231 Ala. 503, 165 So. 582 (Sup. Ct. 1936); Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 150 N.W. 141 (Sup. Ct. 1914); see also "The Inquisitorial Functions of Grand Juries," 41 Yale Law J., 687 (1932).
Respondent relies upon the following cases: Irwin v. Murphy, 129 Cal. App. 713, 19 Pac.2d 292 (Dist. Ct. of App. 1933); In re Report of Grand Jury, 152 Fla. 154, 11 So.2d 316 (Sup. Ct. 1943); Jones v. People, 92 N.Y.S. 275 (N.Y. App. Div. 1905); Application of Knight, 28 N.Y.S.2d 353 (Gen. Sess. 1941).
The Irwin case was an action for libel against members of a grand jury, and the only issue involved was that of absolute privilege. The case is similar to O'Regan v. Schermerhorn, supra, and is not in point.
In the Florida case, there was a dissenting opinion and in the majority opinion it was stated: "They (grand jury) will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism."
In the Jones case, the majority opinion rested upon the construction of a statute enlarging the common law powers of grand juries. The dissenting opinion of Judge Woodward in this case has been far more influential in the subsequent New York decisions and is said to be founded on "better reason." In re Osborne, 125 N.Y.S. 313, at 319 (Sup. Ct. 1910). The New York courts in later cases have not followed the majority opinion in the Jones case, but have granted *548 motions to expunge censorious statements. See the cases collected in In Matter of Wilcox, 276 N.Y.S. 117 (Sup. Ct. 1934).
In the Knight case the petitioner published accusations against certain public officials and demanded of the court and grand jury that there be an investigation of the charges; after investigation the grand jury reported the charges baseless and recommended to the court that appropriate action be taken against the petitioner. On a motion to expunge, the court held that the petitioner, having initiated the proceedings after publicizing them, was in no position to object to the result of the investigation. Obviously, such factual situation is not applicable to the present case. See also, Ex parte Cook, 199 Ark. 1187, 137 S.W.2d 248 (Sup. Ct. 1940).
It is clear that the grand jurors in this proceeding were actuated by the best of motives in their investigation; that the filing of their report was honestly done in the belief that the same was for the public good and in the public interest. However, it is the court's opinion that that part of the report which alleges that the petitioners were participants in a "plot or scheme" to remove another commissioner from the Department of Public Safety exposes them to odium and a charge of wrongdoing, even if not charging any violation of the law. This was improper and that part of the report should be deleted from the record.
An order on notice to the prosecutor in accordance with this opinion may be presented to me at the Hudson County Court House at 10:00 A.M. on the 19th day of July, 1951.