123 Utah 458 (1953)
260 P.2d 521
In re REPORT OF GRAND JURY.
SHOEMAKER et al.
v.
STATE
No. 7856.
Supreme Court of Utah.
Decided July 28, 1953.
*459 George S. Ballif, Provo, E. Richard Callister, Jr., Atty. Gen., for appellants.
Clifford L. Ashton, Salt Lake City, C.M. Aldrich, Provo, for respondents.
WOLFE, Chief Justice.
This is an appeal from an order of the lower court granting the motion of the respondents to expunge from the records of the court certain portions of a report made by a Utah County grand jury.
In August of 1951 a grand jury was drawn and impaneled for Utah County. In its charge to the jurors, the court directed them to report any "undesirable or questionable" conditions worthy of special comment which they might find in the course of their investigation, even though no indictment may be found, in order that the "public of this County may be informed as to the condition of the health of their government and administration." After deliberating for three and one-half months, the grand jury presented a report entitled "Grand Jury Presentment," signed individually by each juror. The report, comprised of seven divisions, consisted of findings and recommendations concerning (1) the Utah State Training School in American Fork, Utah County (2) the Utah State Hospital (3) operations of the State Road Commission in Utah County (4) affairs of Utah County (5) the Alpine School District (6) law enforcement in Provo City, and (7) general recommendations. The report both commended and condemned, and in some instances either charged or cast inferences of maladministration and misconduct on the part of certain public officers.
After the report had been presented to the court and made public, the respondents moved to have the report expunged from the records of the court and filed affidavits in support of their motions. The respondents are the commissioners of the State Welfare Commission *460 which has supervision of the State Training School and the State Hospital, the commissioners of the State Road Commission, and Provo City. Upon hearing the motions, the court below ordered expunged those portions of the report dealing with the State Training School, the operations of the State Road Commission in Utah County and part of the report dealing with law enforcement in Provo City. From that order this appeal is prosecuted, the appellant contending that in this state a grand jury may make a report of its investigations even though it does not return an indictment.
Before considering the appellant's contention, it should be noted that throughout this opinion we will refer to the grand jury's report as a report although the jury in the instant case entitled it a "presentment." The respondents claim that a "presentment" by a grand jury is not a report of conditions found by the jurors, but is an informal accusation of a crime addressed to the public prosecutor and differing from an indictment only in form. In some cases the two words are used interchangeably. The words "presentment" and "present" appear in Sec. 77-18-4, Utah Code Annotated 1953, prescribing the oath which must be administered to the foreman of the grand jury:
"* * * You, as foreman of the grand jury, do solemnly swear that you will diligently inquire into and true presentment make of all public offenses against the laws of this state, committed or triable within this country, of which you shall have or can obtain legal evidence. * * * That you will present no person through malice, hatred or ill-will, and you will not leave any unpresented through fear; favor or affection, or for any reward or the promise or hope thereof; but in all your presentments you will state the truth, the whole truth and nothing but the truth, according to the best of your skill and understanding, so help you God." (Emphasis added.)
Again, in the Fifth Amendment to the Constitution of the United States, the word "presentment" is used:
"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand *461 Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; * * *." (Emphasis added.)
"It would seem that the word "presentment" was employed in the above statute and constitutional amendment as meaning an accusation of crime. But because this question of nomenclature is collateral to the matter with which we are here concerned, no purpose would be served in further pursuing it.
Counsel for the appellant and the respondents are not in agreement as to whether at common law a grand jury could make a report of conditions deemed by them to be in need of remedying. In the appellant's brief, quotations from W.S. Holdsworth, "A History of English Law," vol. X, pp. 146-151 are set out wherein the author states that in England in the eighteenth century, grand juries reported that particular statutes had not been enforced by officials responsible for their observance.
"The most important class of cases to which this procedure was applied was the class of cases concerned with the maintenance of roads, bridges, gaols, and other country buildings. Inhabitants were presented for not repairing their highways; counties were presented for not repairing bridges, gaols or houses of correction; and disputes between different districts were fought in proceedings initiated in this manner. So normal was this procedure in these cases that it was approved and encouraged by the Legislature."
The respondents contend that this practice referred to by Holdsworth was isolated and not general and that such practice was abolished by statute in England in 1827 and 1835. The following cases hold that at common law a grand jury could not make a report not followed by an indictment: In re Presentment to Superior Court, Hudson County, 14 N.J. Super. 542, 82 A.2d 496; Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 150 N.W. 141; In re Report of Grand Jury of Baltimore City, 152 Md. 616, 137 A. 370.
*462 In this state, we have statutes prescribing the powers and duties of grand juries. Five of those statutes will be here quoted:
77-19-1, Utah Code Annotated 1953:
"The grand jury may inquire into all public offenses within the jurisdiction of the court committed or triable within the county, and present them to the court by indictment, or by an accusation in writing."
77-19-4:
"The grand jury shall not be bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced, and for that purpose may require the prosecuting attorney to issue process for the witnesses."
77-19-6:
"If a member of a grand jury knows, or has reason to believe, that a public offense within the jurisdiction of the court has been committed, he must declare the same to his fellow jurors, who must thereupon investigate the same."
77-19-7:
"The grand jury must inquire into the case of every person imprisoned in the jails of the county on a criminal charge and not indicted or informed against; into the conditions and management of the public prisons within the county; and into the wilful and corrupt misconduct in office of public officers of every description within the county."
77-19-8:
"They shall also be entitled to free access at all reasonable times to the public prisons, and to an examination without charge of all public records within the county"
California and New York have substantially identical statutes. In those two states, intermediate courts of appeal have construed their statutes as allowing grand juries, even *463 though they find no indictment, to make reports to the court of conditions found by them although their reports, directly or indirectly, charge or infer maladministation or misconduct on the part of public officials. In the case of In re Jones, 1905, 101 App.Div. 55, 92 N.Y.S. 275, 276, 16 N.Y. Anno Cas. 15, 19 N.Y. Crim. Rep. 59; Id. 181 N.Y. 389, 74 N.E. 226 a grand jury made a report censuring certain public officers for improper performance of their duties, but did not indict them. A motion by the individuals censured to expunge the report was denied and an appeal was taken to the Appellate Division of the Supreme Court which affirmed the action of the lower court. After setting out the provisions of sec. 260 and 261 of the New York Code of Criminal Procedure (which sections are substantially identical with sections 77-19-7 and 8, Utah Code Annotated 1953, quoted above) the court said:
"We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report. As such powers are limited to inquiry, and the grand jury has no executive or administrative authority in the premises, the result of any inquiry must be report or statement which shall call attention to the wrong. The grand jury can but report to the court to which it was returned, and by which it is discharged. Such reports are commonly termed `presentments.' * * *
"I think, therefore, that any final finding upon the exercise of these inquisitorial powers may be called a presentment, and that it may be regarded as final, and not improper, because an indictment cannot or does not follow it. * * *
"Such inquiry as is required by sections 260 and 261 may reveal misconduct, inattention, or shortcomings of public officials, and the report of presentment might be colorless or ineffective unless it specified individual delinquencies. I think that in such a case the grand jury can properly point out those individuals who, as officials, are deemed responsible, and that the presentment may stand though it be not followed by an indictment. It may be pertinent to call attention to the fact that inefficiency, carelessness, or neglect may require correction, and yet not jutify indictment, and to the fact that not all willful or corrupt misconduct in office can be presented in the first instance by indictment; * * *."
*464 The court further stated that a grand jury could not under the guise of a report accuse, and because there are no means to answer the accusation, thereby compel the accused to stand mute if the facts would warrant indictment, but that a grand jury could make a report even though it incidentally pointed out that certain officials were responsible for omissions or commissions, negligence or defects. In a dissenting opinion, Mr. Justice Woodward stated that there were two purposes for a grand jury
"one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusation of crime. When the grand jury goes beyond this, and attempts to set up its own standards, and to administer punishment in the way of public censure, it is defeating the very purposes it was intended to conserve; * * *."
Since the decision of the court in the Jones case, there have been decided several cases by county courts in New York, some of which have criticized the majority opinion in the Jones case and have preferred the dissenting opinion of Mr. Justice Woodward. In re Heffernan, Co. Ct., 125 N.Y.S. 737; In re Osborne, 68 Misc. 597, 125 N.Y.S. 313; In re Woodbury, Sup., 155 N.Y.S. 851; In re Crosby, 126 Misc. 250, 213 N.Y.S. 86; In re Funston, 133 Misc. 620, 233 N.Y.S. 81; People v. McCabe, 148 Misc. 330, 266 N.Y.S. 363; and In re Wilcox, 153 Misc. 761, 276 N.Y.S. 117. In the most recent county court case, however, In re Healy, 161 Misc. 582, 293 N.Y.S. 584, 596, the court states that
"Notwithstanding the splendid, well-reasoned dissenting opinion of Mr. Justice Woodward, I am inclined to believe that the prevailing opinion expresses the intention of the Legislature when it formulated the provisions of section 260 of the Code of Criminal Procedure. Under that section the grand jury must inquire, among other things, into the condition and management of the public prisons in the county. If the only result of inquiry with reference to the public prisons is limited to the findings of an indictment or silence on the part of the grand jury, then that subdivision of section 260 of the Code of Criminal Procedure will be almost valueless, but, if the view adopted by the court in Jones v. People, supra, is to prevail, then very valuable and salutary results may come from intelligent investigations by *465 grand juries. Prison conditions may be deplorable due to overcrowding, lack of adequate sanitary facilities, the age of the buildings, and to many other factors which may contribute to such conditions, yet in no such instance might the grand jury be warranted in finding an indictment. * * * So, also, it is entirely conceivable that public officials, while not guilty of criminality, may be found to be so lacking in understanding or appreciation of the duties which are part of their office that a grand jury may be discharging a very high form of public service if they report findings based upon a fair, honest, and thorough investigation of all the facts. * * *
"The advantages to the people of the state in giving power to our grand juries to investigate in accordance with the provisions of section 260 of the Code of Criminal Procedure far outweigh any consideration for the feelings of public officials who may be criticized by such grand juries. The caliber of the membership of the grand juries is a matter which lies within the control of the courts. The selection of men of experience, of integrity, of high citizenship, of courage, of honesty, and with a reputation for fair dealing, is a problem easily solved by those whose privilege and duty it is to select and determine the membership of our grand juries. And it is only fair to assume that grand juries so selected will confine their presentments to matters which are properly subject to their consideration. Under the law of our state there is always available to the grand juries sitting at any term of court the advice of the district attorney and of the justices of the Supreme Court and the judges of the County Court.
"Long ago it was said that `public office is a public trust.' Any public official should at all times be willing to render promptly an account of such trusteeship. No matter what his office may be, he is but the servant of the people, and in accepting such office he must be presumed to know that his acts in office are subject to the scrutiny provided by section 260 of the Code of Criminal Procedure. If he administers his office with a high regard for the trust which has been placed upon him by those who elected or appointed him, then he need have no concern about investigation; if he fails the trust, then, of course, he should have no complaint if the interests of the people are best served by disclosing his failure to fulfill the responsibilities and obligations of the office which he has assumed."
In 1933, a District Court of Appeal in California was confronted with the question which concerns us in the instant case. In Irwin v. Murphy, 129 Cal. App. 713, 19 P.2d 292, 293, a grand jury, after inquiring into a certain boxing contest in which one of the participants had been killed, made a *466 report condemning the manner in which boxing matches were conducted and the conduct and character of those connected with the promotion and management of the contests. The jury recommended that the Governor request the resignation of the boxing commissioner and that the license of a certain referee be revoked. No indictments were found, however, against any of the principals involved. The referee censured by the grand jury brought an action against the jurors for alleged libel and slander growing out of the report, contending that a grand jury has only the power to indict on definite charges, and that if they do not find sufficient evidence to indict, their power terminates and they cannot make a report of their investigations. The court concluded that in view of the statutes governing the powers and duties of grand juries, which statutes are substantially identical with our statutes set out above, such a construction of the powers of a grand jury was too narrow. Said the court:
"As a matter of routine, if nothing further, the power to investigate includes as an integral part thereof the right and duty to report the result of such investigation. The duty of a grand jury is to protect the citizen against unfounded accusation. Matter of Tyler, supra [64 Cal. 434, 1 P. 884]. Such a duty, coupled with the power of investigation, almost demands completeness of disclosure on matters investigated. It seems futile to attempt demonstration of the obvious. Law and common sense combine to compel the conclusion that, if a grand jury is authorized and bounden to inquire of public offense, a necessary element of this power must be the power and duty to disclose the result of the inquiry. * * *
"* * * Given a homicide, the grand jury upon investigation must find whether or not a public offense had been committed. They were compelled, under the statute, to hear and consider evidence which would explain the death. What an inane and lifeless body a grand jury would be if the limit of its power in case no indictment were returned were complete silence or a formal report of two words  `charge ignored.' Without further discussion, we conclude that the report before us did not involve any person or subject beyond the scope of legitimate inquiry."
*467 See also In re Report of Grand Jury, 152 Fla. 154, 11 So.2d 316, where it was held a grand jury did not exceed its jurisdiction in making a report containing findings of fact and recommendations to the Governor that a certain constable be removed from office.
Outside of New York and California, there is little authority for grand juries to make reports of undesirable conditions found by them, if the report charges or casts reflection of misconduct or maladministration upon a public officer, unless the report is followed by an indictment of the officer. Numerically, the weight of authority heavily favors the position taken by Mr. Justice Woodward in his dissent in In re Jones, supra, and many cases quote extensively from his opinion. The reasoning of those cases which deny to grand juries the power to make such a report is perhaps best summed up in the case of People v. McCabe, 148 Misc. 330, 266 N.Y.S. 363, 367, wherein it is stated:
"A presentment [report] is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes  the right to answer and to appeal. It accuses, but furnished no forum for a denial. No one knows upon what evidence the findings are based. An indictment may be challenged  even defeated. The presentment is immune. It is like the `hit and run' motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed."
In Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 150 N.W. 141, Ann. Cas. 1916E, 223, the court held that under the statutes of that state there were only two matters upon which a grand jury had the statutory authority to make a report viz.: trespass upon public lands and violations of the election laws. The Court of Appeals of Maryland in re Report of Grand Jury of Baltimore City, 152 Md. 616, 137 A. 370, held that a grand jury had statutory authority to make a report to the court of their investigations of penal institutions within their jurisdiction. The court noted that while it had long been the custom and practice *468 in that state for grand juries upon their discharge to make a report as to general conditions, such reports although they may have a salutary effect, would be permitted only so long as they did not point out individuals as subjects of public criticism and opprobrium. Other cases denying the right to grand juries to make a report which charges or implies misconduct on the part of a pubic officer but is not followed by an indictment are Ex parte Robinson, 231 Ala. 503, 165 So. 582; State v. Bramlett, 166 S.C. 323, 164 S.E. 873; In re Grand Jury Report, 204 Wis. 409, 235 N.W. 789; Presentment to Superior Court, Hudson County, 14 N.J. Super. 542, 82 A.2d 496; Hayslip v. State, 193 Tenn. 643, 249 S.W. 2d 882; State ex rel. Strong v. District Court, 216 Minn. 345, 12 N.W. 2d 776, 778. With the exception of the last cited case, in none of the cases which deny the grand jury the right to make a report does it appear that there were any statutes involved similar to ours. In State ex rel. Strong v. District Court, supra, however, the court held that even under a statute (Minn. St. 1941 § 626.25 [now M.S.A. § 628.61]) which is almost identical with our sec. 77-19-7, directing the grand jury to inquire into the "`wilful and corrupt misconduct in office of all public officers in the county,'" a grand jury had no authority to make a report which exposed a private citizen to odium and a charge of wrongdoing, even if not charging any violation of the law.
The statutes of this state prescribing the powers and duties of grand juries, some of which have been set out earlier in this opinion, contain no express authorization for the filing of a report by a grand jury of their findings and recommendations. By sec. 77-19-7 grand juries are enjoined to
"inquire into the case of every person imprisoned in the jails of the county on a criminal charge and not indicted or informed against; into the conditions and management of the public prisons within the county; and into the wilful and corrupt misconduct in office of public officers of every description within the county."
*469 There is no express direction in that statute that they make a report of their findings to the Court. The only statute which contains any express direction as to disposition is sec. 77-19-1 which provides that
"The grand jury may inquire into all public offenses within the jurisdiction of the court committed or triable within the county, and present them to the court by indictment, or by an accusation in writing." (Emphasis added.)
In the instant case, the grand jury's report did not deal with the case of any person imprisoned in the jails or the conditions and management of the public prisons. It was devoted to findings of its investigation of certain welfare institutions, the several political subdivisions in Utah County, and the activities of the State Road Commission in Utah County. Whatever may be the duty of a grand jury in regard to the condition and management of the penal institutions and the persons imprisoned therein, a question which is not before us, and which may be influenced by different considerations of public policy, we conclude that it would be dangerous to imply from our statutes any authorization for a grand jury to make a report of unsavory conditions found by them in investigating other public institutions and governmental subdivisions and agencies, if the report, directly or indirectly, charges or imputes misconduct on the part of a public officer whom the grand jury does not choose to indict. Grand juries should have and do have broad inquisitorial powers. It is in the public interest that their investigations be unbridled and unrestrained in order that the commission of any public offense may be uncovered and the offender be brought by indictment to answer for his crime. If however, no evidence of the commission of a public offense is unearthed by a grand jury which warrants their returning an indictment, we think it subservient to the best interests of our citizenry that no report be filed with the court which contains any imputation of misconduct or wrongdoing on the *470 part of a public officer unless the grand jury follows the report with an indictment of the officer in question. While much good can result from a grand jury calling attention to conditions which they find to be in need of remedying, when the report goes further and impugns the motives and conduct of public officials, the possibility of damaging the reputation of blameless public officials overshadows the good which might result to the public from the filing of such a report.
The remarks of Chief Justice Gummere in his charge to the grand jury of Essex County in 1907, quoted in re Presentment of Superior Court, Hudson County, supra, are apropos here [14 N.J. Super. 542, 82 A.2d 497]:
"* * * When a man is indicted his character is attainted because the general public believes that he would not be indicted if he had not violated the law. If he is innocent, however, he has the opportunity to demonstrate it. Where a presentment [report] besmirches the reputation of a man he has not the opportunity to justify himself. He goes through life with a stigma, and there are no charges which he may meet. He is charged with matters not subject to the criminal law, although not looked on with credit."
To the lay citizen a grand jury report has the appearance of being more than simply the concensus of the private opinions of the several jurors. It has the appearance of being made with great authority and under the sanction of the court, giving to its findings and recommendations a solemnity which impresses the mind of the public. In re Osborne, 68 Misc. 597, 125 N.Y.S. 313. For these reasons it is extremely important what a grand jury states in its report.
Our conclusions are strengthened by the fact that the last phrase of sec. 77-19-7 directs the grand jury to inquire into the willful and corrupt misconduct in office of public officials within the county. As noted by the lower court in his memorandum decision, the words "willful and corrupt," while often used loosely, mean something more than merely *471 "inefficient," "incompetent," "neglectful," or "inept." Willful and corrupt misconduct is of a more serious nature, constituting the violation of the law for which an indictment would lie or malfeasance in office for which removal proceedings could be brought against the official involved.
The order of the lower court expunging those portions of the grand jury report which censured the respondents for alleged misconduct and maladministration is affirmed. Costs awarded to respondents.
McDONOUGH, CROCKETT, HENRIOD and WADE, J.J., concur.