13446

STATE v. BRAMLETT

(164 S. E., 873)

*Messrs. Price & Poag* and *C. G. Wyche,* for appellant,

*Messrs. John M. Daniel, Attorney General, Cordie Page, Assistant Attorney General, J. L. Leatherwood, Solicitor,* and *D. W. Smoak,* for respondent,

July 11, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant, at the times hereinafter set out, was, and is now, the sheriff of Greenville County. At the October, 1931, term of the Court of General Sessions for that county a "True Bill" against him was returned by the Grand Jury, upon an indictment which charged him with official misconduct in the particulars therein set forth. The case was not tried at that term of the Court because the bill of indictment came in too late. It was continued at the January, 1932, term, on motion of the State's attorney. At the March, 1932, term, the appellant appeared in Court and demanded a trial. The State's attorney resisted the motion, and, upon the ruling by the Court that the case should be heard at the afternoon session of that day, March 14th, the indictment was "nolle prossed," with the statement by the Solicitor that other indictments would be handed out. The Grand Jury completed its work March 15, and the Solicitor announced that there were no other bills for the Grand Jury at that term. In the afternoon of March 16 the Grand Jury made its final presentment. At that time no indictment was pending against appellant, nor was any bill against him in the hands of the Grand Jury. Conceiving that certain features of this presentment were improper, and would work serious ill to the appellant, his counsel moved the presiding Judge to expunge such parts from the record, and to purge the Grand Jury of certain alleged disqualified members. The motion was refused, but the matter was held open by the Court. Thereafter, March 22d, appellant filed a special motion that the matter be reopened and the portions of the presentment referring to him be expunged from the record.

The motion was refused, and, from the order of refusal, this appeal is made.

There are six exceptions, but only two questions are made by them: (1) Did the presiding Judge err in not expunging from the record the parts of the presentment of the Grand

Jury which, it is alleged, injuriously reflected upon appellant? (2) Did his Honor err in not sustaining appellant's motion to purge the Grand Jury?

It may well be questioned whether the order which this Court is asked to review is appealable, but, since the State has not made that objection, and since the appeal involves a question touching the provision of our Constitution which guarantees to every person charged with crime (Article 1, § 18) a speedy and fair and impartial trial by jury, we waive the question whether the order is appealable. It may be that the case falls within the category of cases to which Chief Justice Pope referred in the case of *Rhodes v. Southern Ry.*, 68 S. C., 503, 47 S. E., 689, 692; upon the authority of the case of *Capell v. Moses*, 36 S. C., 559, 15 S. E., 711: "It is in only exceptional cases that this Court views with approval an appeal from an interlocutory order. * * * "

There seems to exist in the minds of many a misconception of the powers and duties of Grand Juries. It may not be inopportune at this time to define them.

The Grand Jury was: "At common law a jury composed of not less than twelve nor more than twenty-three duly qualified men, whose duty it is to inquire into charges of crime or misdemeanor, to decide from evidence offered whether there is *prima facie* ground for criminal accusation, and thence to find a bill of indictment, or ignore the charge as the evidence heard may warrant." The National Encyclopedia Dictionary, Vol. III, p. 367.

The number of Grand Jurors is fixed by statute or constitutional provision in each state. In this State it consists of eighteen.

"The Grand Jury is of very ancient origin in the history of England, going back many centuries. For a long time its powers were not clearly defined; and it would seem from the accounts of commentators on the laws of that country that it was at first a body that not only accused, but also

tried public offenders. However this may have been in its origin, it was at the time of the settlement of this country *an informing and accusing body only,* without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial. And in the struggles which in those times arose in England between the powers of the King and the rights of the subject, it often stood as a barrier against persecution in his name." (Italics added.) 12 R. C. L., 1014.

"The Grand Jury, having chosen their foreman, are next instructed in the articles of their inquiry by a charge from the Judge who presides upon the bench. They then withdraw to receive indictments preferred to them in· the name of the sovereign, but at the suit of any private suitor; *and they are only to hear evidence in behalf of the prosecution: for the finding of an indictment is only in the nature of an inquiry or accusation which is afterwards to be heard and determined: and the Grand Jury are only to inquire upon their oaths whether there is sufficient cause to call upon the party to answer it."* (Italics added.) Blackstone's Commentaries, Bk. IV, c. 23.

"A Grand Jury is an informing and accusing body rather than a judicial trial." 20 Cyc., 1294.

It is the generally accepted rule in this jurisdiction that a Grand Jury has supervision of the enforcement of law and order, the preservation and protection of morals and social order, supervision of public offices, the inspection and examination of the books of such offices, and the conduct of them by the officers occupying them, and things of like import.

"To Grand Juries is committed the preservation of the peace of the country, the care of bringing to light for *examination, trial and punishment,* all violence, outrages, indecencies, and terror: Everything that may occasion danger, disturbances, or dismay to the citizens. Grand Juries are watchmen stationed by the law to survey the conduct of

their fellow citizens, and inquire where and by whom public authority has been violated, or our constitution and laws infringed." (Italics added.) Wharton's Criminal Proc., Vol. II (10th Ed.), pp. 1713, 1714.

In ordering the report expunged from the record in the case of the *Matter of Osborne,* 68 Misc., 597, 125 N. Y. S., 313 (cited in Ann. Cas., 1916-E, 228, note), the Court held that it has become a custom of almost invariable occurrence that the Grand Jury at the close of its term makes a presentment on some subject on which perhaps no evidence has been heard. This proceeds, no doubt, from the zeal of the members to promote the public welfare by calling attention to conditions which they think should be remedied. So long as they are confined to matters of general interest, they are harmless. * * * But it is very different when the motives and conduct of the individual are impugned and he held to reprobation without an opportunity to defend his name and reputation, for it must be borne in mind that, if the gentlemen of the Grand Jury were to meet as an association of individuals and give expression to the sentiments expressed in the presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain unfounded and exaggerated statements. The injury arises from a prevalent belief that a Grand Jury making the presentment speaks with great authority, and acts under the sanction of the Court, thereby giving to its deliverances a solemnity which impresses the public. This is a grave error. The powers and duties of a Grand Jury are defined by law. No matter how respectable or eminent citizens may be who compose the Grand Jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that under an ancient form which they have not a legal right to do.

It is seen that Grand Juries have large inquisitorial powers. *But those powers are not unlimited,* and they must be exercised for the purpose of presenting

offenders to the proper officers for proper legal proceedings against them, or for the finding of bills of indictment; as, for instance, the calling to the attention of the proper authorities conditions which are in the nature of a menace to good morals, or the peace and health of communities. Grand Juries may by presentment bring to the attention of the Court and officers of the law the condition of roads, bridges, public buildings, schools, school buildings, and matters of a like nature.

But a Grand Jury transcends its powers and exceeds its duty when in its presentment it expresses its opinion of the force and effect of the evidence which it has heard, *ex parte,* or has itself collected in its investigations, or when it discusses that evidence, and/or, when it presents an officer or person by name, and with words of censure and reprobation, without presenting him for indictment, or without finding a true bill against him on a bill of indictment in its hands. Even then it should be careful to refrain from any expression of opinion of the guilt of the person, or any words of condemnation. The reason for this rule of law is obvious.

The Constitution and statute laws of the State give to any person charged with crime the right to a fair, impartial, and speedy trial by a jury of twelve of his peers. The accused is given the right to be confronted with his accusers, and the right of cross examination of the witnesses for the prosecution, and the presentation of his own witnesses. He has the right to be heard by counsel. He comes into Court with the presumption of innocence about him, till his guilt is proved.

These rights and guaranties would be denied him if the Grand Jury in its presentment to the Court could prejudge the question of his guilt or innocence by the expression or suggestion of the strength of the evidence which its investigation has disclosed. Its province is to present the person for the definite crime to which it thinks the evidence points

with the names of the witnesses, and/or the documentary evidence in proof of the charge. If the Grand Jurors are acting on an indictment already given them, their return of "True Bill" or "No Bill" expresses their *prima facie* reaction to the *ex parte* evidence. Beyond this they have no right nor power to go.

In the light of these established principles of law, let us analyze the presentment of which complaint is made by this appeal.

An indictment for official misconduct had been found ▪ by the Grand Jury of 1931 against appellant. It was *nolle prossed* about the 14th of June, 1932, and the announcement made that other indictments would be laid before the Grand Jury. None were given to it at that term of Court. Their final presentment was made June 16th. In it they referred specially and in detail to the charge that the appellant, as sheriff, had sold and disposed of automobiles which had been seized while engaged in liquor traffic, and had not accounted for the proceeds. *That was one of the charges contained in the indictment which had just been nolle prossed two days before the presentment was made.* Therefore that matter was not before them and that phase of the presentment could not have referred to the indictment which was *nolle prossed*. No other indictment against appellant was in the hands of the Grand Jury, *nor did they recommend that one be issued against him on this ground.*

*Again,* they present that they find that the appellant has deposited in several banks, in his private accounts, sums largely in excess of his salary as sheriff. There is no bill of indictment charging him with embezzlement of public funds, issued against him, in their hands, *nor do they recommend that one be issued.*

The presentment as it relates to the sending of private telegrams which were charged to the sheriff's official account is followed up with the recommendation that proper legal steps be taken to correct this practice. This action was within the province of the presentment.

In regard to the presentment as it relates to the alleged disappearance of witnesses Paris, Davis, and Hunt, it appears that it is made in connection with indictments which had previously been found against several certain county officers. It would therefore not be an improper presentment in its application to those indictments. But that part of it which seems to suggest that appellant was concerned in this matter is improper unless they intended to present him for indictment for this offense, *which they did not do*.

So far as the presentment relates to the conduct of C. E. Davis and James A. Davis on the charge of a conspiracy to obstruct justice in the trial of Sheriff Bramlett, the Grand Jury recommended the indictment of these two men, and Jury recommended the indictment of these two men, and the presentment is therefore not objectionable in this feature of it.

There is no impropriety in that part of the presentment which recommends that other indictments against Senator Bryson be issued in lieu of that which had been *nolle prossed*.

Nor can there be any serious objection to the recommendation that maximum sentences be imposed on all persons convicted of crime. It is a recommendation only, addressed to the consideration of the Court.

Insofar then as the presentment relates to the sale of automobiles by appellant, and to the deposit of funds in the banks in his own name, and to the implied suggestion that the appellant was concerned in the alleged disappearance of the witness Hunt, there being no recommendation of action against him, and no indictments on such charges pending against him, we are of opinion that the Grand Jury exceeded its powers, and the presentment imperils appellant's right to a fair and impartial trial upon such indictments as may be brought against him on these charges.

Appellant moved the Court to expunge from the record the parts of the presentment which he conceived injuriously affected him, and were not properly in-

cluded in it. The presiding Judge was doubtful of his authority to entertain the motion to expunge. We think he was in error in this respect.

The Grand Jury, like the petit jury, is an integral part of the machinery of the Court, all of which is under the control and direction of the presiding Judge.

It is undisputed in this State that the Court has control of the verdicts of petit juries and may order them reformed, or recommit them with instructions to conform them to the pleadings and issues, and in proper cases may set them aside. The Court may refuse to receive an erroneous verdict. In the case of *Sanders v. Charleston Consol. Ry. & Lighting Co.,* 154 S. C., 220, 151 S. E., 438, 439, it is said, quoting syllabus 4 : "When jury returning sealed verdict was polled and one of jurors announced that the verdict attempted to be rendered was not his verdict, it was the duty of the Court, unless something appeared to show that a just verdict could not be rendered, to require jury to return to their room and consider the case further."

In the case of *Lorick & Lowrance v. Julius H. Walker & Co.,* 153 S. C., 315, 150 S. E., 789, 791, this is said: "Even when a sealed verdict is permitted to be returned and the jury has been allowed to disperse and separate from the time of their announcement of agreement to the time of the publication of the verdict, when it appears that the verdict is clearly erroneous as to form, the Judge has the power to require a reconsideration by the jury"—citing *Devore v. Geiger,* 41 S. C., 138, 19 S. E., 288; *Lagrone v. Timmerman,* 46 S. C., 372, 24 S. E., 290.

It would hardly be questioned that, if a Grand Jury should so far forget the proprieties of a Court as to hand up a presentment in language foul and offensive to the Court and to the public, the Judge would have the right to refuse to receive it, or, if unwittingly received, to have it expunged from the record.

"Grand Juries sometimes make a sort of general presentment of evils, or evil things to call attention to them. It has

been held that a Grand Jury has no power to file with the Court a report of this nature, *charging no crime, but reflecting on the conduct of specified individuals. And a Court may expunge such a report from the records where it appears to have been inadvisedly made, or is merely a guise to accuse a public official of laxity in the enforcement of certain laws.*" (Italics added.) 28 C. J., 799.

In the case of *Bennett v. Kalamazoo Circuit Judge,* 183 Mich., 200, 150 N. W., 141, 144, Ann. Cas., 1916-E, 223, the grand jury of Kalamazoo County made a presentment severely criticizing the district attorney, *without indicting him for any offense.* On a petition to expunge the record, the Supreme Court said: "A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the Grand Jury has no right to file such a report, *unless it is followed by an indictment.* * * * Whether the matter contained in such report be true or false, it can make no difference with the principle involved. *In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps, upon insufficient evidence, * * * without having the opportunity to meet his accusers and reply to their attacks.* This situation is one which offends every one's sense of fair play. * * * Upon the coming in of said report, we are of the opinion, that it was the duty of the trial Court to have refused to accept it, or file it with the records of his Court. *Having received and filed it, * * * it was plainly his duty to have expunged it from the files.*" (Italics added.)

In the case of *Parsons v. Age-Herald Pub. Co.,* 181 Ala., 439, 61 So., 345, cited in Ann. Cas., 1916-E, 228, 229 (note), the Supreme Court of Alabama said: "It is unnecessary, in my determination of the question, to decide whether 'presentment' and 'indictment' are synonymous. Much has been learnedly written on this subject, and the weight of

authority still seems to be that the Grand Jury have a right to make presentments, even though they be not followed by an indictment; *but the Courts seem to be equally emphatic in insisting that a presentment cannot be used by the Grand Jury merely as a guise to accuse and thereby compel a person to stand mute, if the presentment would warrant an indictment so that the accused might answer, and that when a presentment is merely a guise used by the Grand Jury to accuse, the presentment should be expunged from the record."*

We are of the opinion that the presiding Judge had the power, and it was his duty, to expunge from the presentment so much thereof as referred to the matter of the sale of automobiles by the appellant as sheriff, the reference to appellant's bank account, and so much as refers to the alleged disappearance of C. P. Hunt, insofar as the same relates to the appellant, for the reasons that no indictments are pending against him on these grounds, and the presentment does not recommend that such indictments be issued.

The second ground of appeal is the error imputed to the trial Judge for that he denied the motion to purge the Grand Jury. There was no sufficient ground shown to justify his Honor in granting the motion. The inference is sought to be deduced from the language of the presentment that some members of the Grand Jury are prejudiced against the appellant, and are opposed to him politically, and that they are motivated by these considerations in making this presentment. There are some unnecessary and harsh passages in the paper which might better have been left out, and the document is more argumentative than legal in its character. We prefer, however, to believe that these defects in the presentment are due to the zeal of the Grand Jurors in the performance of their duties, rather than to political purposes or personal prejudices.

Only the matters herein specified are to be expunged. In all other respects the presentment stands of record as presented.

The case is remanded to the Circuit Court, with direction to carry into effect the views herein expressed; and the order appealed from is modified in accordance therewith.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER and ACTING ASSOCIATE JUSTICE COTHRAN concur.