165 So. 582

## Ex parte ROBINSON.
### 6 Div. 898.

Supreme Court of Alabama.
Jan. 30, 1936.

Horace C. Wilkinson, of Birmingham, for petitioner.

504

Geo. Lewis Bailes, Sol., and Robt. G. Tate, Deputy Sol., both of Birmingham, for respondent.

**FOSTER, Justice.**

Petitioner, who is also appellant, moved the circuit court to expunge from its records the report of a grand jury of Jefferson county in which petitioner and his official acts were criticized. That report stated that they failed to find evidence of such corruption as would warrant impeachment, but much evidence to show improper conduct in the management of the city's affairs, which they thought should be condemned in the strongest terms. No indictments were returned against petitioner, but he, as a city commissioner of Birmingham, was severely criticized by the report which went into much detail respecting his official conduct, which they thought was due to be, and was thus, condemned.

█ There is no question but that the circuit court had the power to expunge such report, if it should have been done. There are many cases reported in which such procedure was successfully prosecuted, and they will be here cited in connection with the propriety of such a report of the grand jury.

The only case in Alabama which deals with such a report is a suit for defamation against a newspaper for publishing the report. Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 61 So. 345, 349. Arising in that manner, the question was collateral to that which we now have. The court was inquiring whether it was such a judicial or public record as to be privileged. The court held that matter in such a report which touched the fitness for the office, or fidelity of its service, or propriety of official conduct, were properly matters of public interest, and privileged: holding that the law of defamation in that respect was "a compromise between private rights and the public good, and other cases must be decided as they arise, with a due regard for these conflicting interests." Before reaching that conclusion, the opinion states a principle whose language has been frequently quoted in cases decided by the courts of other states, as follows: "They [grand jurors] are neither required nor authorized by any statute to report the result of such investigations [sections 4497 and 4519, Code] when they fail to find any impeachable fault or offense; and when they report and criticize any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action, and is in fact no part of any judicial proceeding, actual or potential." The opinion at another place proceeds: "We cannot overlook the fact, which is a matter of common knowledge, that grand juries in this state have immemorially exercised this form of supervision over the official conduct of county officers, and have from time to time admonished them of alleged official misconduct, and criticized them for supposed official improprieties, and have brought such matters to the attention of the public, as a part of their general report to the court. This practice has the sanction at least of general custom, and may perhaps be justified by considerations of public welfare or necessity." The opinion does not assert that the practice is legally justified, but the first quotation has often been treated by other courts as holding that it is not legally justified, since it asserted that such report is no part of a judicial proceeding, actual or potential.

It is made apparent in the later case of Peinhardt v. West, 217 Ala. 12, 115 So. 88, that the holding of the Court was merely that it was published as a document which carried the privilege. It was not because it was the province of the grand jury to make such a report. 22 A.L.R. 1367 et seq. And it has been held that members of the grand juries making such report are not subject to libel suits. Irwin v. Murphy, 129 Cal.App. 713, 19 P.(2d) 292. That opinion also justifies grand juries in making such reports. That is the only case we have seen which does so (not subsequently overruled), but the question was collateral, as in our Parsons Case, supra, which does not, as we have shown, go the extent of say-

ing that the grand jury has that legal right. We have not looked into the statutes of that state to see how far they are controlling on that subject.

On the other hand, where the question has arisen on direct attack, as here, with one accord, the cases hold that the officer when he is thus criticized has the right in such a proceeding as this to have the report expunged. In one case it is thus expressed: "While it may be observed that the court has tolerated, rather than sanctioned, such presentments of things general, yet the grand jury should never, under cover of a presentment, present an individual in this manner for, if it have legal evidence of the commission of the crime, it should find an indictment against him upon which he could be held to answer, and, if it have no such evidence, it ought, in fairness, to be silent." In re Gardiner, 31 Misc. 364, 64 N.Y.S. 760, 762. This is quoted in Re Wilcox, 153 Misc. 761, 276 N.Y.S. 117, at page 125, with quotations to a like effect from many other cases. It was also said: "It cannot be that it was ever contemplated that this body created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations." All this in respect to public officers. The dissenting opinion to the same effect in Jones v. People, 101 App. Div. 55, 92 N.Y.S. 275, has been approved in the later cases decided by that court. In re Osborne, 68 Misc. 597, 125 N.Y.S. 313, 318, it is said: "So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and after the ephemeral motive of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation." The motion was by a district attorney.

And, likewise, such a motion was sustained in many cases by officers thus criticized— In re Heffernan (Co.Ct.) 125 N.Y.S. 737, In re Woodbury (Sup.) 155 N.Y.S. 851, In re Crosby, 126 Misc. 250, 213 N.Y.S. 86, and in People v. McCabe, 148 Misc. 330, 266 N.Y.S. 363, 367, where it is said in part: "An indictment may be challenged— even defeated. The presentment is immune. It is like the 'hit and run' motorist. Before application can be made to suppress it it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed." Also In re Funston, 133 Misc. 620, 233 N.Y.S. 81; State v. Bramlett, 166 S.C. 323, 164 S.E. 873, 875. In the latter case, the court observed: "But a grand jury transcends its powers and exceeds its duty when in its presentment * * * it presents an officer or person by name, and with words of censure and reprobation, without presenting him for indictment."

A vast number of cases are to the same effect. In re Grand Jury Report, 204 Wis. 409, 235 N.W. 789; In re Report of Grand Jury, 152 Md. 616, 137 A. 370. In this case there is a review of the cases cited above, and many others approved the principle. Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 150 N.W. 141, Ann.Cas.1916E, 223, 28 Corpus Juris, 799, and many text-writers are quoted to the same effect in the Wilcox Case supra.

We are clear that the petitioner had the legal right to have the report expunged, and that mandamus is the appropriate method of review, since this is not an adversary, but an ex parte proceeding.

If, upon being advised of this opinion, the trial judge shall refuse or fail to expunge the report of the grand jury here referred to, a rule nisi will be ordered upon the further application of petitioner.

Writ of mandamus awarded, conditionally.

GARDNER, THOMAS, BOULDIN, BROWN, and KNIGHT, JJ., concur.