73 So.2d 912

## Ex parte BURNS.

### 7 Div. 238.

Supreme Court of Alabama.

June 30, 1954.

Wilkinson & Skinner, Birmingham, **for** petitioner.

Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., amici curiae.

STAKELY, Justice.

Arthur Burns, the Solicitor of the 16th Judicial Circuit, moved the circuit court to expunge from its records the report of a Grand Jury of Etowah County in which he and his official acts were criticized. The court overruled and denied the motion and from this ruling of the court, the present appeal has been taken, with a prayer in the alternative for a writ of mandamus.

On October 12, 1953, the Grand Jury of Etowah County returned into court a report which was received and filed, which contains a number of accusations against the appellant. The accusations may be summarized as follows:

"1. Lack of cooperation between the sheriff's office and the Solicitor's office.

"2. An unwillingness on the part of the Solicitor to better relations between the Solicitor and the sheriff.

"3. Inefficiency.

"4. A bad attitude on the part of the Solicitor.

"5. The use of profane language in the performance of the Solicitor's official duties.

"6. Carelessness on the part of the Solicitor.

"7. Indifference on the part of the Solicitor.

"8. Lack of diligence in the prosecution of defendants brought before courts and grand juries charged with violation of prohibition laws.

"9. Repeated reduction of charges of transporting—to charges of violation of the prohibition laws—by the Solicitor.

"10. The treatment of habitual violators of the prohibition laws as first offenders.

"11. Preferential consideration of a syndicate selling bonded whiskey over those charged with distilling or selling moonshine whiskey.

"12. Failure to prosecute in a fearless and impartial manner.

"13. Lack of diligence in condemning motor vehicles seized for transporting more than five gallons of liquor.

"14. Wearing fire-arms or a pistol in and about the courthouse and in and about his official duties."

The grand jury did not indict or recommend impeachment proceedings against appellant.

Appellant filed a motion to expunge the report and each sentence, paragraph and part of the report that criticized appellant.

The Attorney General filed a motion to overrule and deny appellant's motion to expunge. The motion of the Attorney General was based on the grounds that the appellant had requested the Attorney General to investigate appellant's office, that the appellant publicly charged the sheriff with failure to enforce adequately the prohibition laws and the sheriff publicly charged the appellant, as Solicitor, with the same thing; that the charges were published in the Gadsden Times, a newspaper of general circulation in Gadsden and in Etowah County; that the appellant and the sheriff engaged in a public dispute through the newspapers on or about May 31, 1953; that the appellant appeared as a witness before the grand jury; that the grand jury returned the report sought to be expunged at the conclusion of the investigation.

Appellant made a motion to strike the motion of the Attorney General and to overrule and deny the motion of the Attorney General.

The court overruled appellant's motion to strike the motion of the Attorney General. The case was then submitted to the court on stipulations between counsel that certain publications were made in the Gadsden Times which were attached to the stipulation with the understanding however that the movant, Arthur Burns, did not admit the materiality of such facts. The court took the matter under advisement and on the 1st day of February, 1954, entered an order overruling and denying the appellant's motion to expunge the report of the grand jury. To this ruling of the court the appellant reserved an exception and now brings the case here by appeal and in the event an appeal will not lie, he asks in the alternative for a writ of mandamus, requiring Judge Pittman to grant his motion to expunge.

We have then a situation in which a grand jury has made a report highly critical of Arthur Burns in connection with the discharge of his duties as Solicitor of the 16th Judicial Circuit of Alabama. A part of the report is not only critical but defamatory and derogatory in its nature. There was, however, no indictment found by the grand jury against Arthur Burns nor was there any recommendation in the report that impeachment proceedings be instituted against him. Appellant has made a motion to expunge the report and this brings before us a matter of considerable importance.

In Ex parte Robinson, 231 Ala. 503, 165 So. 582, there was a motion to expunge from its records the report of a Grand Jury of Jefferson County in which the petitioner as City Commissioner and his official acts were criticized. The opinion in Ex parte Robinson, supra, quotes the language from the opinion in Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 61 So. 345, as follows:

" * * * 'They (grand jurors) are neither required nor authorized by any statute to report the result of such investigations (sections 4497 and 4519, Code) when they fail to find any impeachable fault or offense; and when they report and criticize any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action, and is in fact no part of any judicial proceeding, actual or potential.' The opinion at another place proceeds: 'We cannot overlook the fact, which is a matter of common knowledge, that grand juries in this state have immemorially exercised this form of supervision over the official conduct of county officers, and have from time to time admonished them of alleged official misconduct, and criticized them for supposed official improprieties, and have brought such matters to the attention of the public, as a part of their general report to the court. This practice has the sanction at least of general custom, and may perhaps be justified by considerations of public welfare or necessity.' * * "

It should be noted from the foregoing that it is a matter of common knowledge that a practice has grown up of long-time duration in which grand juries in Alabama have exercised supervision over the official conduct of county officers of lesser grade than impeachable fault or offense, have admonished them from time to time of alleged official misconduct, have criticized them for supposed official improprieties and have brought such matters to the attention of the public as a part of their general report to the court. It is asserted that this practice has the sanction at least of general custom and may well be based on considerations of public welfare or necessity. But the opinion in Ex parte Robinson, supra, goes on to show that a grand jury should never, where it has legal evidence of the commission of crime or impeachable conduct, merely criticize the official, but on the contrary, should either indict or recommend his impeachment or in fairness remain silent. The opinion quotes with approval these words from In re: Wilcox, 153 Misc. 761, 276 N.Y.S. 117, at page 124:

" * * * 'It cannot be that it was ever contemplated that this body, created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations.' * * * "

The court held in Ex parte Robinson, supra, that clearly the petitioner had the right to have the report of the grand jury expunged.

But in the present case it is very earnestly insisted that a situation is presented different from the situation in Ex parte Robinson, supra, because in the present case the grand jury's investigation was made on the request of the appellant and after a controversy between him as solicitor and the Sheriff of Etowah County, had received considerable publicity through articles published in the Gadsden Times, a newspaper of general circulation in Etowah County. In refusing to expunge the report of the grand jury the court said: "The critical report sought to be expunged does not charge the petitioner with acts for which he could be indicted or which would support a recommendation for impeachment. If it had, the grand jury should have indicted or recommended impeachment or remained silent as to these acts." In other words the court approved the principles laid down in Ex parte Robinson, supra, but denied their applicability.

■ While some of the matters complained of in the report are merely critical of improprieties on the part of the solicitor, other charges admit of a clear inference of impeachable conduct. We are not here dealing with pleading necessary to show impeachable conduct in an impeachment proceeding, but merely with the report of a body of laymen impaneled as a grand jury. We do not believe that a grand jury has the right to condemn a public official for impeachable conduct without a trial, without an opportunity to be heard, without the privilege of a forum in which to make his

defense. To us it is not in accord with the American sense of fair play and justice in this manner to deprive him of his good name and to put a stigma in this manner upon his character.

It is argued that the appellant had no right to request the investigation of the grand jury and then when he found it critical, to seek to expunge it from the record. In other words, it is the position that since he asked for an investigation, he should take the report as it is made. We are unwilling to agree with this view. On the contrary, we think that when he asked for the investigation, he was asking for what appeared would be a result in accordance with a recognized rule in Alabama, that either he would be indicted or recommended for impeachment or that the grand jury would stand silent. He knew that if he was indicted or impeached, he would have a forum in which he could defend himself.

■ Does the grand jury under the laws of this state, whether regulated by statute or usage constituting the common law, have a right to determine what that body should do under its power to report on the manner and methods in which and by which the appellant conducted his official office? What, if any, is the limitation upon the powers of the grand jury in this regard? Can it establish its own standards of right and wrong and subject citizens to the odium of a judicial condemnation without giving them the slightest opportunity to be heard? It seems to us that this would be a perversion of the essential spirit of the grand jury system, which has for its object the protection of the citizen against an open and public accusation of crime and from the trouble, expense and anxiety of a public trial before a probable cause is established by indictment. It cannot be that it was ever contemplated that this body, created for the protection of the citizen, was to have the power to set up its own standards of public or private morals and to arraign citizens at the bar of public opinion without responsibility for its abuse of that power and without giving the citizen the right to a trial upon the accusations. We call attention to the fact that the members of grand juries

making a libelous report are not subject to libel suits. Ex parte Robinson, supra.

The grand jury has two great purposes, —one to bring to trial those who are properly charged with crime, the other to protect the citizen against unfounded accusations of crime. It seems to us that when the grand jury goes beyond this and attempts to set up its own standards and to administer punishment in the way of public censure for conduct which amounts to an impeachable or indictable offense, it is defeating the very purposes it was intended to conserve and its action cannot be lawful. We add that if charges of indictable or impeachable conduct are found to be baseless, it could be reported that such charges were found to be baseless to offset publicity which had been given to such charges.

We conclude upon a consideration of the matter that the rule laid down in Ex parte Robinson, supra, is a sound and correct rule and should be followed in the instant case and that the motion to expunge the report of the grand jury should be granted. In the instant case the court refused to expunge the report of the grand jury on the idea that its action was within its judicial discretion. We do not believe however that the matter of expunging a grand jury's report is within the discretion of the court, where the report is derogatory or defamatory, amounting in effect to impeachable or indictable offense, and no indictment is found or impeachment proceedings recommended. We have carefully examined cases from other jurisdictions to which we have been cited, as for example, Ex parte Cook, 199 Ark. 1187, 137 S.W.2d 248; Hayslip v. State, 193 Tenn. 643, 249 S.W.2d 882, and Application of Knight, 176 Misc. 635, 28 N.Y.S.2d 353. There is no need to make an extended analysis of these cases here. Suffice it to say that for one reason or another we are not persuaded that these cases should modify the rule in Ex parte Robinson, supra, in the instant case.

Mandamus is the appropriate method of review. Ex parte Robinson, supra.

If upon being advised of this opinion the trial judge shall refuse or fail to expunge those features of the report of the grand jury here involved, which indicate impeachable conduct or indictable offense a rule nisi will be ordered upon the further application of the petitioner.

Writ awarded conditionally.

LIVINGSTON, C. J., and SIMPSON, MERRILL and CLAYTON, JJ., concur.

LAWSON and GOODWYN, JJ., dissent.