**STATE, Plaintiff, v. ROBINETTE, Defendant.**

Common Pleas Court, Pike County

No. 5980.   Decided January, 1957.

Wray Bevens, Pros. Atty., for plaintiff.
Joseph Deutschle, W. P. Reed, for defendant.

(REYNOLDS, J, of Franklin County, sitting by Assignment.)

## OPINION

By REYNOLDS, J.

This case is before the Court on defendant's plea in abatement to the indictment returned by the Grand Jury against defendant.

The indictment is made up of two counts as follows:

"FIRST COUNT: Appeared as a witness before a Grand Jury duly impaneled and sworn in and for Pike County, Ohio, said Grand Jury having jurisdiction of the matters being inquired into by it and then and there before said Grand Jury the said Clifford C. Robinette on oath lawfully administered committed perjury by testifying as follows: that on or about the 14th day of July, 1955, that he did not tell, advise or inform one Cliff Beckett, Editor, Manager and Publisher of the Piketon Press that the Ralph D. Brown interests had deposited $75,000.00 in liquid assets in a Columbus bank to guarantee a performance bond to be issued by the American Surety Company of New York with respect to the construction of a water and sewer system to the proposed J. Maderia Brown hospital site; said testimony being material and being false in that said statements were made.

"SECOND COUNT: That the said Clifford C. Robinette on the date and county aforesaid appeared as a witness before a Grand Jury duly

impaneled and sworn in and for Pike County, Ohio, said Grand Jury having jurisdiction of the matters being inquired into by it and then and there before said Grand Jury the said Clifford C. Robinette on oath lawfully administered committed perjury by testifying as follows: That the Manager of the Columbus Office of the American Surety Company of New York did while in his presence, contact banks and other financial institutions and ascertained that the Ralph D. Brown interests did have in liquid assets $75,000.00 or more with which to guarantee a performance bond for the construction of sewer and water facilities to the J. Maderia Brown Hospital site, said testimony being material to said cause and being false in that no such investigation was ever made."

The plea in abatement is predicated on several grounds, but only the 4th and 5th need be considered. They are as follows:

"4. The Grand Jury out of which the indictment grew was investigating a civil matter over which it had no jurisdiction and not a criminal matter as provided for by law as its report shows.

"5. The alleged statements of the defendant which the State claims constitute perjury are not material to any criminal cause."

Upon the hearing of defendant's plea in abatement, a copy of the Grand Jury's report, so far as it pertains to the case, was put in evidence. From this report it appears that the Grand Jury was considering a petition submitted to the Prosecuting Attorney charging that public funds had been misspent or misapplied by the County Commissioners or the Board of Hospital Trustees of Pike County.

It further appears that pursuant to the approval of a $500,000 bond issue for the erection of a county hospital, a Board of six members was appointed pursuant to statute to select a site and arrange for the erection and equipment of the said proposed hospital. Several sites were offered, among which were the J. Maderia Brown site and later the so-called Waverly Gables site.

The Board had found, according to the Grand Jury report, that of the first six sites proposed and considered, only the J. Maderia Brown site could meet minimum requirements necessary to participate in the Hill Burton Act, or in other words, receive Federal aid.

It was then that the site known as Waverly Gables was offered at a price of $15,000.00 and this was the site selected by the Board.

The Grand Jury reported that the evidence presented before it justified the action of the Hospital Board in selecting this site, considering the cost of the land, preparation, architectural design with respect to topography and that both water and sewer facilities were to be provided without cost to the county.

From this report the only conclusion which can be reached is that the Grand Jury had constituted itself as a reviewing body to pass upon the wisdom and authority of the Hospital Board in choosing the site selected. There is no hint of any criminal act or other irregularity having been committed by the Board or even of any criminal investigation by the Grand Jury with respect to the Board and its actions and decisions.

It must be borne in mind that outside of inspecting the County Jail,

the Grand Jury's sole duty and authority are the investigations of crimes and offenses. It has no right or authority as an advisory board or reviewing body as to other public officers, board, commissioners or authorities.

The question which then immediately suggests itself to the Court is what possible materiality there could be as to whether the owners or those interested in having the J. Maderia Brown site selected, had deposited $75,000 in liquid assets to secure a bond insuring the construction of a water and sewer system, or whether defendant had so informed a third party who was neither a member of the Hospital Board or a public official.

The answer seems obvious, namely, that it had no possible materiality to any criminal offense being investigated by the Grand Jury and while the indictment charges that defendant denied that he had told a third party about the posting of $75,000, which denial was material and false, it falls short of alleging that it was material to any crime being investigated, and therefore fails to charge a perjury.

Sec. 2915.25 R. C., provides that:

"No person, either orally or in writing, on oath lawfully administered shall wilfully and corruptly state a falsehood as to a material matter in relation to which an oath is authorized by law * * *"

The J. Maderia Brown site was not selected by the authorized Board and what possible difference could it have made or what materiality with relation to what the Board did could have been a statement by defendant or anyone else for that matter, to the effect that provision had been made to secure a bond for certain performance with respect to said site?

Assuming that defendant did make the statement charged and then denied it before the Grand Jury, the logical observation is: **So What!**

The Board did nothing with respect to the Brown site except to reject it as the location for the proposed hospital, and there is no suggestion that there was anything irregular, much less criminal, in its decision so that anything said or done by parties interested in the Brown site was entirely immaterial with respect to any criminal investigation as to the conduct of the Board.

The conclusion therefore is inescapable that anything said or done with reference to the Brown site is immaterial and not the proper foundation for a perjury indictment.

This could be illustrated by a situation in which the Board was charged with a misapplication of funds and upon trial, the question was asked as to whether representations were made respecting the guaranteeing of the construction of a sewer system in a property other than the one selected. If objection were made to the question, it would be sustained as being immaterial.

What has been said of the first count is equally applicable to the second count; the matter set out there charged as false being clearly immaterial to any matter properly before the Grand Jury.

The plea in abatement is therefore sustained as to both counts of the indictment.