257 So.2d 884 (1972)
Petition of Russell C. DAVIS to Strike or Expunge Part of a Grand Jury Report at July 1970 Term.
No. 46571.
Supreme Court of Mississippi.
February 7, 1972.
*885 Watkins & Eager, Jackson, for petitioner.
A.F. Summer, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
This is an appeal by Russell Davis, Mayor of Jackson, from an adverse decision by the Circuit Court of Hinds County wherein the court refused to expunge portions of a grand jury report.
The grand jury report sprang from an investigation of the events which transpired at Jackson State College on May 13, 14 and 15, 1970. During this period the campus was touched with riots, burning of property, occupation by the Mississippi National Guard, Mississippi State Highway Patrol and the City of Jackson police, and the eventual killing of two young students and the wounding of others.
At the July 1970 term of the Circuit Court of the First Judicial District of Hinds County a grand jury was convened, made a lengthy investigation and returned a report dealing with the unfortunate occurrences at Jackson State. The report, while not calling for any indictments, made many derogatory statements and inferences concerning the activity or inactivity of Mayor Russell Davis.
Appellant, Russell Davis, sought to expunge that part of the report which reflected upon his conduct. The petition to expunge was presented to the circuit court on August 12, 1970. At the conclusion of a hearing the court took the matter under advisement for a final judgment to be entered in vacation. Six months having passed without an order or final judgment being entered, the appellant perfected an appeal to this Court in accord with Mississippi Code 1942 Annotated section 1650.5 (1956). Thereafter, the appeal having been perfected on February 15, 1971, the trial court rendered its opinion and entered its order on February 17, 1971. Whereupon the first appeal was dismissed and this appeal perfected.
The circuit judge's opinion in regard to the propriety of the report stated:
Petitioner's complaint is that the Grand Jury was without authority to comment upon his actions in his official capacity as Mayor of the City of Jackson. Since time immemorial in each and every Grand Jury report there is contained *886 therein remarks or statements by the Grand Jury relative to the activities or conduct of office by the public officials within the respective county. In fact, it is the duty of a Grand Jury to investigate the conduct of these public officials and in its report make the public aware of same.
Generally speaking, each and every report of the various Grand Juries has commended the actions of various city, county and state officials. Certainly no complaints by these officials have ever been made that the Grand Jury exceeded its authority, and in the opinion of the undersigned, it is imperative that a Grand Jury have the authority to investigate and report on the conduct of its public officials, whether it be laudatory or derogatory, otherwise the community would not be aware of their officials' activities.
The appellant argues that although the grand jury has broad powers to indict public officials for wrongful neglect of duty under Section 175, Mississippi Constitution (1890), it does not have the power to file a report charging no crime, but reflecting on and criticizing the conduct of specified officials and individuals. Section 175 reads as follows:
All public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, or otherwise punished as may be prescribed by law.
The Mississippi Legislature has enacted provisions for the filing of grand jury reports in only four additional instances: (1) with respect to the status of forest protection under Mississippi Code 1942 Annotated section 1782 (1956), (2) with respect to inspection of the county jails under Section 1787, (3) with respect to inspection of the accounts and books of county officials under Section 1788, and (4) with respect to inspection of the tax collector's books under Section 1789. The report before this Court can be classified under none of the above sections.
The initial issue presented is whether the report filed by the grand jury can be classified as either an indictment or a presentment. While some jurisdictions refer to presentment and report synonymously as connoting a written transmittal filed by the grand jury with the court, there is a technical difference between a presentment and an indictment.
An indictment is a written accusation prepared by the public prosecutor and presented before the grand jury who examines the evidence in support of it to determine if sufficient to secure the conviction of the accused. In finding an indictment the grand jury is similar to a trial jury except that it only hears one side of the case. Crumley v. State, 180 Tenn. 303, 174 S.W.2d 572 (1943); Hunt, Legality of a Grand Jury Report, 52 Mich.L.Rev. 711 (1954).
A presentment in a strict sense is just as an indictment a specific charge of crime designating the person or persons accused, but taken in the first instance by a grand jury. A grand jury hears the witnesses and evidence and determines from its own knowledge that a crime has been committed. A presentment may be regarded as simply an instruction for an indictment. In Re Report of Ormsby County Grand Jury, 74 Nev. 80, 322 P.2d 1099 (1958); Hunt, Legality of a Grand Jury Report, supra; Dession and Cohen, The Inquisitorial Functions of Grand Juries, 41 Yale L.J. 687 (1932).
Various jurisdictions in recent years have debated the propriety or authority of a grand jury to issue a report which is neither a presentment nor an indictment. The overwhelming weight of authority indicates *887 a refusal to subject an individual to a quasi official accusation of misconduct resulting from secret ex parte proceedings in which there is no opportunity available for presenting a formal defense. In Re Report of Ormsby County Grand Jury, supra. Ex Parte Burns, 261 Ala. 217, 73 So.2d 912 (1954); State ex rel. Brautigam v. Interim Report of Grand Jury, 93 So.2d 99 (Fla. 1957); Dession and Cohen, Inquisitorial Functions of Grand Juries, supra.
The opinion of the lower court that a grand jury should have the authority to investigate the conduct of public officials has some appeal. This view is shared by Chief Justice Vanderbilt, who indicated that while grand jury reports are not always flawless, they may be a necessary evil of our judicial system. In In Re Presentment of Camden County Grand Jury, 10 N.J. 23, 66, 89 A.2d 416, 443-444 (1952), he stated that:
Grand jury presentments of public affairs serve a need that is not met by any other procedure. The grand jury provides a readily available group of representative citizens of the county empowered, as occasion may demand, to voice the conscience of the community. There are many official acts and omissions that fall short of criminal misconduct and yet are not in the public interest. It is very much to the public advantage that such conduct be revealed in an effective, official way. No community desires to live a hairbreath above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing. By exposing wrongdoing, moreover, such presentments inspire public confidence in the capacity of the body politic to purge itself of untoward conditions.
While some merit may arise from noting deplorable conditions, it is our opinion that when a grand jury impugns the conduct of a public official, the possibility of damaging or destroying the reputation of an innocent official far overshadows or outdistances any good that may spring from the report. In Re Report of Grand Jury, 123 Utah 458, 260 F.2d 521 (1953).
Perhaps the strongest attack upon an ex parte report for the grand jury is found in People v. McCabe, 148 Misc. 330, 266 N.Y.S. 363, 367 (1933), wherein the Court stated:
A presentment (referring to a report not calling for an indictment) is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes  the right to answer and to appeal. It accuses, but furnishes no forum for a denial. No one knows upon what evidence the findings are based. An indictment may be challenged  even defeated. The presentment is immune. It is like the "hit and run" motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed. (Parenthesis supplied).
See also Ex Parte Robinson, 231 Ala. 503, 165 So. 582 (1936), and State v. Bramlett, 166 S.C. 323, 164 S.E. 873 (1932).
While a grand jury may present any person for indictment, if evidence sufficient to justify an indictment is not introduced in the ex parte proceeding, its power over the matter or offense investigated is terminated unless it falls within one of the four addenda enacted by the legislature in expanding the constitutional powers of a grand jury. It is obvious that the report here was not limited to the grand jury function of indictment or presentment nor was it within the legislative enactments. The grand jury's report was in excess of that body's lawful authority. The caustic comments found therein *888 were, therefore, a trespass upon the rights of the appellant even though he be a public official.
The statement of a grand jury demands respect within a community and its deliberations and conclusions are tantamount to fact in the eyes of the populace. Our judicial system is couched in due process and fairness. Conviction by innuendo resulting from an ex parte proceeding is not compatible with and is extremely offensive to these basic principles of jurisprudence.
We are of the opinion that all portions of the grand jury report referring to the conduct of Mayor Russell Davis should be expunged.
Reversed and rendered.
GILLESPIE, C.J., and INZER, SMITH and ROBERTSON, JJ., concur.