Simington et al., Appellants, *v.* Shimp, Appellee

[Cite as Simington v. Shimp (1978), 60 Ohio App. 2d 402.]

(No. S-77-13—Decided December 15, 1978.)

*Mr. William R. Bowlus,* for appellant.
*Mr. Stephen E. Hagerman,* for appellee.

Connors, J. This is an appeal from a judgment entered in the Common Pleas Court of Sandusky County, pursuant to an original action for a declaratory judgment and injunctive relief.

Prompted by three child-abuse related deaths within a twelve-month period, the Sandusky County grand jury instituted an investigation of the Sandusky County Welfare Department. Two of the witnesses subpoenaed to testify at that investigation, plaintiff-appellants Richard Simington, director of the Sandusky County Welfare Department, and Jeanne Dunn, supervisor of the Children's Services Division, were granted immunity from suit by the county prosecutor's office.

On August 9, 1976, the grand jury issued a document entitled "Report on Findings, Sandusky County Welfare Department." The report, which was generally critical of the operating procedures of the county welfare department, included eleven findings and twelve "recommendations." The eleventh finding was stated thusly:

"On the basis of all the problems that have been ascertained, on the basis of the testimony of the witnesses here, we find a lack of adequate supervision over the work product of the case workers by Children's Services Supervisor, Jeanne Dunn, and the Director, Richard Simington."

The recommendations suggested were, *inter alia:* re-evaluation of plaintiff-appellants Simington and Dunn; establishment of a "Welfare Advisory Board"; reorganization of the Children's Services Division's filing system; initiation of monthly, unannounced, foster home visits; hiring of para-professionals; closer cooperation between the department and local law enforcement agencies; and cessation of any contact between the department and a client once that client has been called to testify at a criminal investigation.

After the above-mentioned report was filed with both the Sandusky County Clerk of Courts and the Board of County Commissioners, it was released to the public and publicized by the news media.

Subsequently, plaintiff-appellants filed an original action, seeking (1) a declaratory judgment as to the authority of the Sandusky County grand jury to investigate the county welfare department and to issue a report thereon, and (2) a mandatory injunction requiring, *inter alia,* expungment of the August 9, 1976, report from the records of the clerk of courts and the county commissioners.

The Sandusky County Common Pleas Court, in an opinion dated April 29, 1977, ordered the expungement of paragraph eleven of the report's findings (quoted above), and further ordered the expungement of the report's list of "recommendations." The remainder of the report was sustained. From that final judgment, plaintiffs bring this appeal.

Generally speaking, a grand jury report is a written statement made to a court by a grand jury responsible to that court. These reports often have as their target unwholesome situations in a particular community and, upon occasion, are critical of specifically named individuals. The characteristic that distinguishes reports from other types of grand jury activity is that they do not formally charge named persons with the commission of specific criminal acts.[1]

---

[1] Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play?* 55 Colum. L. Rev. 1103 (1955). A number of commentators have discussed grand jury reports. A partial list includes the following:

Dession and Cohen, *The Inquisitorial Functions of Grand Juries,* 41 Yale L. J. 687 (1932); Konowitz, *The Grand Jury as an Investigating Body of Public Officials,* 10 St. John's L. Rev. 219 (1936); Kuh, *The Grand Jury "Presentment:" Foul Blow or Fair Play?* 55 Colum. L. Rev. 1103 (1955); Weinstein and Shaw, *Grand Jury Reports—A Safeguard of Democracy,* 1962 Wash. U. L. Q. 191; Comment, *Constitu-*

Various courts have searched English common law to find a basis for grand jury reports.[2] One prominent case which has been cited as supporting the legitimacy of grand jury reports is *Earl of Macclesfield* v. *Starkey* (1684-85), 10 Howell State Trials 1330. A grand jury in England's Chester County, though failing to return a formal indictment, charged the Earl of Macclesfield (and others) with disloyalty and sedition. The Earl brought an action for libel against the jury members, contending that grand juries should lodge only specific charges of criminal conduct and that no grand jury had authority to impugn a reputation without giving the opportunity for rebuttal. He further argued that the grand jury acted outside of its jurisdiction, in that the alleged disloyal and seditious conduct did not take place in Chester County. The defendants argued, *inter alia*, that it was the practice of grand juries to report on matters of county business, and that their oath required them to make known any conduct which threatened the nation's welfare. The court, while finding unanimously for the defendants, did not write an opinion. Thus, its rationale is not clear; more particularly, its explicit support for the propriety of grand jury reports is absent.

However, despite the lack of clearly defined judicial support, English grand juries continued to issue numerous reports during the late Seventeenth Century. Topics ranged from the maintenance of bridges and roads and misconduct by public officials to horse racing, cock fighting and the practices of innkeepers.[3]

Grand jury reports were issued in the American colonies as well. In the late 1600's, New York grand juries reported on

---

*tional Law—Judicial Powers, Legality of the Grand Jury Report,* 52 Mich. L. Rev. 711 (1954); Comment, *Grand Jury Reports: An Examination of the Law in Texas and Other Jurisdictions,* 7 St. Mary's L. J. 374 (1975); Comment, *The Grand Jury: Its Present Day Function and Correlative Powers,* 29 Fordham L. Rev. 152 (1961); Note, *Criminal Law—Grand Jury Without Power to File Report Censuring Public Officials Where No Indictment is Returned,* 12 Syracuse L. Rev. 516 (1961); Note, *The Grand Jury as an Investigatory Body,* 74 Harv. L. Rev. 590 (1961).

[2] See *In re Grand Jury* (Md. 1970), 315 F. Supp. 662; *Wood v. Hughes* (1961), 212 N.Y.S. 2d 33; *In Re Report of Grand Jury* (1953), 260 P. 2d 521.

[3] S. and B. Webb, English Local Government from the Revolution to the Municipal Corporations Act: The Parish and the County 448-455 (1906); 10 Holdsworth, A History of English Law 146-50 (1938).

[4] Goebal and Naughton, Law Enforcement in Colonial New York 361-65 (1944).

liquor sales and road repair.[4] Topics of public welfare were also the subject of reports in New Jersey.[5]

An overview of state case law reveals a divergence of opinion as to the propriety of grand jury reports. A distinct majority of state court decisions, reaching as far back as 1860, have opposed the issuing of such reports.[6] Some courts have specifically denied the power of grand juries to issue reports criticizing named individuals.[7] In other jurisdictions, however, grand jury reports of nonfeasance by public employees have been deemed proper.[8] And, in at least two instances, courts have permitted reports which criticized individuals whose false charges initiated grand jury action.[9] Support for the authority of grand juries to issue reports on general community matters has been infrequent.[10]

Several federal courts have dealt with the question of grand jury reports. In 1953, a federal grand jury document connecting certain labor union officials to possible communist activity was expunged by a Federal District Court in New York.[11] That court noted that the publication of mere suspicions in grand jury reports served to undermine the entire indictment process.[12] *Hammond* v. *Brown* (N.D. Ohio 1971),

---

[5] See *In Re Presentment by Camden County Grand Jury (1952)*, 10 *N.J.* 23, 89 *A. 2d 416, 426.*

[6] *Rector* v. *Smith* (1860), 11 Iowa 302; *Bennett* v. *Kalamazoo Circuit Judge* (1914), 183 Mich. 200, 150 N.W. 141; *Coons* v. *State* (1922), 191 Ind. 580, 134 N.E. 194; *In Re Report of Grand Jury* (1927), 152 Md. 616, 137 A. 370; *Report of Grand Jury* (1931), 204 Wis. 409, 235 N.W. 789; *State* v. *Bramlett* (1932), 166 S.C. 323, 164 S.E. 873; *Ex Parte Robinson* (1936), 231 Ala. 503, 165 So. 582; *In Re Hudson County Grand Jury* (1951), 14 N.J. Super. 542, 82 A. 2d 496; *In Re Report of Grand Jury, supra.* See also the dissent of Judge Woodward, in *Jones* v. *People* (1905), 101 App. Div. 55, 92 N.Y.S. 275.

[7] *E.g., Ex Parte Burns* (1954), 261 Ala. 217, 73 So. 2d 912; *Harris* v. *Edmonds* (1969), 119 Ga. App. 305, 166 S.E. 2d 909; *In Re Brevard County Grand Jury Interim Report* (Fla. 1971), 249 So. 2d 709.

[8] *Irwin* v. *Murphy* (1933), 129 Cal. App. 713, 19 P. 2d 292; *In Re Presentation by Camden County Grand Jury* (1952), 10 N.J. 23, 89 A. 2d 416; *Owens* v. *State* (Fla. 1952), 59 So. 2d 254; *Ryon* v. *Shaw* (Fla. 1955), 77 So. 2d 455.

[9] *Ex Parte Cook* (1940), 137 S.W. 2d 248; *Hayslip* v. *State* (1952), 193 Tenn. 643, 249 S.W. 2d 882.

[10] *In Re Report of Grand Jury* (1927), 152 Md. 616, 137 A. 370; *Ex Parte Faulkner* (1952), 221 Ark. 37, 251 S.W. 2d 822.

[11] *Application of United Elect., Radio and Machine Workers* (S.D. N.Y. 1953), 111 F. Supp. 858.

323 F. Supp. 326, affirmed 450 F. 2d 480, decided by an Ohio Federal District Court, involved a grand jury report resulting from the Kent State University incident of May 1970. In holding that the report was issued without lawful authority, the court reasoned that a report which named individuals had the effect of determining guilt and was, therefore, violative of due process of law.[13]

In both *Hammond, supra,* and *Application of United Elect. Radio and Machine Workers* (S.D. N.Y. 1953), 111 F. Supp. 858, grand jury reports were expunged because of specific objectionable qualities; no blanket condemnation of the reporting process is found in either decision. This point was noted in *In Re Report and Recommendation of June 5, 1972 Grand Jury* (D.C. 1974), 370 F. Supp. 1219. That court went on to hold that grand juries should be allowed to issue reports which do not suffer from the objectionable characteristics enumerated in *Hammond* and *Electrical Workers.*[14] Additional support for grand jury reportorial power is found in *In Re Grand Jury* (Md. 1970), 315 F. Supp. 662, *In re Grand Jury Proceedings* (C.A. 5, 1973), 479 F. 2d 458, and *Application of Johnson* (C.A. 7, 1973), 484 F. 2d 791.

A number of states have enacted legislation authorizing grand jury investigations into certain governmental activities.[15] The Ohio statute requiring periodic investigations

---

[12] *Id.,* at 866.

[13] *Hammond* v. *Brown* (N.D. Ohio 1971), 323 F. Supp. 326, 342, affirmed 450 F. 2d 480.

[14] *In Re Report and Recommendation of June 5, 1972 Grand Jury* (D.C. 1974), 370 F. Supp. 1219, 1224-26.

[15] The statutory provisions regarding the functioning of grand juries in each of the fifty states are as follows:

Ala. Code Anno. (Recomp.) 12-16-190 - 12-16-211 (1975); Alaska Stat. 12.40.010 - 12.40.100 (1972); Ariz. R.S. 21-401 - 21-428 (1975); Ark. Stat. Ann. 43-901 - 43-934 (1977); Cal. Penal Code Anno. 888-939.91 (West 1976); Colo. R.S. 13-72-101 -13-73-108 (1973); Conn. G.S. Anno. 54-45 (1973); Del. Code 4501-4512 (1976); D.C. Code 11-1903 (1973); Fla. Stat. 905.01 - 905.40 (West 1973); Ga. Code 59-201 -59-601 (1977); Hawaii R.S. 612.16 (1976); Idaho Code 19-1001 - 19-1207 (1970); Ill. Smith-Hurd Stat. 38-112-1 - 112-7 (1975); Ind. Stat. (Burns Code ed.) 35-1-15-1 -35-1-15-23 (1975); Iowa Code 770.1 - 772.5 (1976); Kan. Stat. 22-3001 - 22-3013 (1977); Ky. R.S. (Bald.) Rules Crim. Pro. 5.02 - 5.24 (1977); La. R.S. 15:111 - 15:121 (1968); Me. R.S. Anno. 1251 - 1260 (1975); Md. Code 27-703 - 27-703½ (1976); Mass. Laws Ann. 277 - 277-14A (1977); Mich. Comp. Laws Anno. Sec. 767.7 - 767.23 (1970); Minn. Crim. R. 18.01 - 18.09 (1977); Miss. Code 13-5-39 - 13-5-63 (1975); Mo.

of and reports on county jail conditions is typical of such legislation.[16] It is, however, the only type of report on civil matters specifically authorized by our legislature.

It should be noted at this point that the Ohio legislature has clearly not authorized grand jury reports which criticize specifically named individuals; the refusal to grant this authority finds convincing support in case law. The Mississippi Supreme Court has stated that a grand jury report criticizing a named individual is a "conviction by innuendo" and not compatible with basic principles of due process and fairness.[17] Other courts have referred to reports which single out unindicted individuals as a perversion of the grand jury system,[18] the work of a lynch mob,[19] and an odious practice.[20] Several courts have pointed out that injury to an individual named in a report can arise not only from the grand jury proceeding, but also from the public's belief that the grand jury speaks with judicial authority.[21] Further, any attempt by a

Stat. 540.010 - 540.330 (1967); Mont. R.C. 95-1401 - 95-1410 (1977); Neb. R.S. 29-1401 -29-1419 (1975); Nev. R.S. 172.045 - 172.285 (1973); N.H. R.S. Anno. 600.1 -600.5 (1955); N.J. Stat. 2A:73-1 -2A:73A-9 (1976); N.M. Stat. 41-5-1 - 41-5-13 (1975); N.Y. Crim. Pro. Law 190.05 -190.90 (McKinney 1977); N.C. G.S. 15A-621 - 15A-630 (1975); N.D. Code 29-10.1-01 - 29-10.2-06 (1977); Ohio R.C. 2939.01 - 2939.29 (1977); Okla. Stat. Anno. 301-346 (1977); Ore. R.S. 132.010 - 132.990 (1977); Pa. Stat. Anno. 17-1351 - 17-1371 (Purdon 1973); R.I. Gen. Laws 12-11-1 - 12-11-1.5 (1977); S.C. Code 14-7-1510 - 14-7-1580 (1977); S.D. Comp. Laws 23-29-1 - 23-29-16 (1967); Tenn. Code 40-1501 - 40-1625 (1977); Tex. Crim. R. 19.01 - 20.22 (1977); Utah Code 77-18-1.1 - 77-19-12 (1977), Vt. Crim. R. 6 (1974); Va. Code 19.2-191 - 19.2-215 (1975); Wash. R. C. 10.27.010 -10.27.190 (1976); W. Va. Code Anno. 52-2-1 - 52-2-14 (1975); Wis. Stat. Anno. 255.10 - 255.26 (1976); Wyo. Stat. Anno. 7-5-101 - 7-5-309 (1977).

[16] R. C. 2939.21 provides the following:

"Three times during each term of court, the grand jurors shall visit the county jail, examine its condition, and inquire into the discipline and treatment of the prisoners, their habits, diet, and accomodations. They shall report to the court of common pleas in writing whether the rules prescribed by such court have been faithfully kept and observed, and whether the law for the regulation of county jails has been observed or violated, stating the particulars of such violation."

[17] *In Re Davis* (Miss. 1972), 257 So. 2d 884, 888; see *In Re Report of Ormsby County Grand Jury* (1958), 74 Nev. 80, 332 P. 2d 1099.

[18] *Ex Parte Burns* (1954), 261 Ala. 217, 73 So. 2d 912.

[19] *State* v. *Interim Report of Grand Jury* (Fla. 1957), 93 So. 2d 99, 102.

[20] *In Re Camden Co. Grand Jury* (1961), 34 N.J. 378, 169 A. 2d 465.

[21] *State* v. *Bramlett* (1932), 164 S.E. 873; *In Re Camden County Grand Jury, supra.*

named individual to rebut the contents of the report would not have, in the public's mind, the same "official weight" as the report's original accusation.[22] Finally, at least one court has noted that legal remedies available to parties criticized in grand jury reports are often inadequate.[23]

In the first reported Ohio case dealing with grand jury reports, *State* v. *Robinette* (1957), 75 Ohio Law Abs. 181, 143 N.E. 2d 186, the Common Pleas Court of Pike County pointed out, at page 182, 143 N.E. 2d at 188:

"It must be borne in mind that outside of inspecting the County Jail, the Grand Jury's sole duty and authority are the investigations of crimes and offenses. It has no right or authority as an advisory board or reviewing body as to other public officers, board, commissioners and authorities."

This language was cited by the Federal District Court for the Northern District of Ohio in the above-noted decision of *Hammond* v. *Brown*. That court went on to hold, *inter alia*, at 345:

"***[A] grand jury is without authority to issue a report that advises, condemns or commends, or makes recommendations concerning the policies and operation of public boards, public officers, or public authorities.***

"A report of an Ohio grand jury, therefore, violates the oath of the grand jury and is, therefore, without authority, when it purports to summarize the evidence received by the grand jury or purports to make findings based upon the evidence."

Though not bound by the holdings in *Robinette* nad *Hammond*, we cite the language therein with approval.

Grand jury investigations of and reports relating to civil matters can have a significant impact and influence on public opinion. Such activity often performs the positive function of informing the public on matters of general community concern. However, such factors as lack of expertise, misinformation, mistake or prosecutorial overzealousness create the very real possibility of unwarranted adverse publicity for those institutions and individuals reported on.

Consequently, the authority to issue grand jury reports

---

[22] *In Re Report of Grand Jury* (1927), 137 A. 370, 376.

[23] *United States* v. *Connelly* (Minn. 1955), 129 F. Supp. 786, 787.

must be carefully controlled. The Ohio legislature has seen fit to exercise such control by limiting reports on civil matters to periodic investigations of county jail conditions; no other type of grand jury report has received legislative sanction.

This court will not extend the authority of grand juries beyond those limits clearly established by statute. Thus, we hold that, absent specific statutory authority, grand jury reports on civil matters are invalid and should not be issued.

In the case *sub judice,* the Sandusky County grand jury issued a report dealing with the operation of the county welfare department; plaintiff-appellants then brought an original action seeking to have the entire document expunged. The Sandusky County Common Pleas Court was obviously troubled both by the allegations of deficiencies in a public agency charged with the administration of public needs and by the grand jury's unauthorized attempt to rectify such alleged deficiencies; thus, in a learned and well written opinion, the court quite properly expunged certain portions of the report. However, the court did not go far enough. The Sandusky County grand jury was without authority to issue a report on the operation of the Sandusky County Welfare Department; consequently, the entire report should have been expunged.

Plaintiff-appellants' assignments of error are found well taken.

This Court finds that substantial justice has not been done Richard Simington and Jeanne Dunn. The judgment of the Sandusky County Common Pleas Court is affirmed, in part, and reversed, in part.

*Judgment affirmed in part*
*and reversed in part.*

POTTER, P. J., and BROWN, J., concur.